**DOCKET NO:**
**22-11236-GG**


**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**Mary Harris**

     **Appellant,**

**v.**

**Monroe County Library Board of Trustees, et al.**
     **Appellees.**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF ALABAMA
**SOUTHERN DIVISION**

**CASE NO.:1:19-cv-00265-CG-N**

**BRIEF OF MARY HARRIS**

---

**Lee Winston**
**WINSTON COOKS, LLC**
**420 20th Street, Suite 2200**
**Birmingham, Al 35203**
**(205) 482-3551**
**Attorney for Mary Harris**
**October 31, 2022**

## Table of Contents

*CERTIFICATE OF INTERESTED PERSONS* ...................................................... 3

*TABLE OF AUTHORITIES* ................................................................................ 4

*STATEMENT REGARDING ORAL ARGUMENT* ............................................. 4

*STATEMENT OF THE ISSUES* ......................................................................... 5

*STATEMENT OF THE CASE* ............................................................................ 5

    I.    **Course of Proceedings and Disposition Below** ................................... 5

*STATEMENT OF FACTS* .................................................................................. 6

*III. STANDARD OF REVIEW* ......................................................................... 13

    A.    **Statement of Standard of Review** ..................................................... 13

*B.   Legal Argument* ........................................................................................ 14

    1.    **Summary of Argument** ....................................................................... 14

    2.    **Harris Did Not Receive Procedural Due Process** ............................. 15

        **Harris's Terminated For Her EEOC Charge Statements** ...................17

    3.    **The Equal Protection Retaliation Claim is Due to be Re-Instated** ........ 21

    4.    **Monroe County is a Proper Defendant or at least questions of Fact are Raised for Trial** ........ 23

*CONCLUSION* ................................................................................................. 27

*CERTIFICATE OF TYPE-VOLUME COMPLIANCE* ....................................... 28

*CERTIFICATE OF SERVICE* ........................................................................... 29

## <u>MARY HARRIS v. MONROE COUNTY LIBRARY BOARD OF TRUSTEES</u>

### CERTIFICATE OF INTERESTED PERSONS

Counsel hereby certifies that the following persons have an interest

in the outcome of this case:

1   The Honorable Callie V. S. Granade- United States District Court
    Judge

2   Monroe County Library Board of Trustees

3   Shannon Powell, Library Board Member

4   Ann Pridgen, Library Board Member

5   Jerome Sanders, Library Board Member

6   Steve Stacey, Library Board Member

7   Mary Harris, former Librarian and Plaintiff

8   Lee David Winston, counsel for plaintiff

9   Peter S. Mackey, Counsel for Library Board

10  Thomas Hart Benton, III , Counsel for Steve Stacey

11  Jamie Helen Kidd Frawley, Counsel for Monroe County Commission

12  Monroe County Commission

Respectfully submitted,

*/s/Lee Winston*
Lee Winston

TABLE OF AUTHORITIES

**Cases**

*B&G Enters., Ltd. v. United States,* 220 F.3d 1318, 1322 (11th Cir. 2000) ................................. 12

*City of Orange Beach v. Duggan*, 788 So.2d 146, 152 (Ala.,2000 .................................................. 15

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985) ................................................................................................................................... 25

*Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542-543, (1985) ............................... 14

*Cobb v. Montgomery Library Bd.,* 207 F. Supp. 880, 882 (M.D. Ala. 1962 ................................... 23

*Galbreath v. Hale Cty., Alabama Comm'n,* 754 F. App'x 820, (11th Cir. 2018) ........................... 25

*Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977) ........... 20

*Hopper v. Solvay Pharmaceuticals, Inc.,* 588 F.3d 1318, 1324 (C.A.11 (Fla.),2009) .................... 13

*Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, (2005) ......................................................... 20

*Lyes v. City of Riviera Beach Florida*, 166 F.3d 1332, (11th Cir. 1999) ......................................... 25

*Oaks v. City of Fairhope*, 515 F. Supp., 1004 (S.D. Ala 1981) ...................................................... 22

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298–99, 89 L. Ed. 2d 452 (1986)( .................................................................................................................................. 23

*Raybon v. Alabama Space Science Exhibit Commission*, 337 F.Supp.3d 1153, 1172 (N.D.Ala., 2018) ...................................................................................................................................... 16

*St. Charles Foods, Inc. v. America's Favorite Chicken Co.,* 198 F.3d 815, 819 (11th Cir. 1999) ...... 12

*Thornton v. E.I. Du Pont de Numours & Co.,* 22 F.3d 284, 288 (11th Cir. 1994) ........................... 12

*University of California Regents v. Bakke,* 438 U.S. 265, 291, (1978) ........................................... 20

*Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72,(C.A.2 (N.Y.),2015 ............................. 21

*Washington v. Davis*, 426 U.S. 229, 239, (1976) ......................................................................... 20

*Watkins v. Bowden,* 105 F. 1344, 1354 (11th Cir. 1997) .............................................................. 21

*Whatley v. CNA Ins. Co.,* 189 F.3d 1310, 1313 (11th Cir. 1999) ................................................. 12

*Wright v. Southland* .................................................................................................................. 17

*Wright v. Southland Corp.*, 187 F.3d 1287, 1298 (11th Cir. 1999) .............................................. 17

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is requested.

## <u>STATEMENT OF JURISDICTION</u>

This is an appeal from final judgment. Jurisdiction is proper under 28 U.S.C. § 1292.

## STATEMENT OF THE ISSUES

Was there evidence of either race discrimination and/or retaliation when Mary Harris was terminated from employment?

If so, as the appointing authority is the Monroe County Commission a proper defendant?

## STATEMENT OF THE CASE

Course of Proceedings and Disposition Below

This case arises out of Mary Harris's claim that she experienced race and retaliation when terminated from employment.

On June 5. 2020, the Magistrate Judge entered the Report and Recommendation Dismissing Monroe County.[1]  On June 17, 2020, the District Court adopted the decision.[2]  On March 16, 2022, the District Court entered summary judgment on the remaining claims.[3]

---

[1] Doc. 46.
[2] Doc. 48.
[3] Doc. 105 (Memorandum Opinion), Doc. 106 (Judgment in favor of defendants).

## STATEMENT OF FACTS

Following over three decades of employment, Mary Harris, an African American, challenges her treatment and termination as the Interim Librarian in Monroeville, Alabama.[4]

The Monroeville County Public Library was founded in 1927.[5]  The Library Board was not created until 1981.[6] The authority to engage employees does not occur until 2002 Amendments.[7]  Between 1926 and 1981, the Monroe County Library presumably operated with no board or an unincorporated board.

Harris considered herself an employee of Monroe County.  Harris was aware that the Commission appointed the Library Board Members and paid the bills.[8]

Harris's employment began in May 1981, included stints as the children's librarian and as Interim Librarian from January 2016 until her September 11, 2017 termination.

---

[4] Monroe County is considered the Literary Capital of Alabama.  Doc. 94-3 Stacey Dec. ¶7. Monroeville was home to Harper Lee, author of *To Kill a Mockingbird* and the setting for the fictional town of Maycomb. https://www.smithsonianmag.com/history/whats-changed-what-hasnt-in-town-inspired-to-kill-a-mockingbird-180955741/

[5] https://moncolib.org/history

[6] Doc. 94-1, pgs. 1-4, Articles of Incorporation of the Monroe County Library Board.

[7] Doc. 94-2, pgs. 1-2, Amendment to the Articles of Incorporation Monroe County Library Board.

[8] Doc. 94-4, pg. 21, 22 Harris Dep. pg. 62:12-23, 63.

In January 2016, Harris was appointed interim director when the prior librarian left in December 2015.[9]  Harris was appointed to the interim position by a board in which Gloria Munson who then left the Board.

In September 2016, the library advertised the Librarian that was being performed by Harris in the Monroe Journal, the local paper. Harris applied for the position in writing and included her resume.[10]  There were two other applicants for the job Crystal Reynolds, a white female and Brenda Taite, a black female.  There was an application process which included interviews and writing a statement about To Kill a Mockingbird novel.[11] The board selected Reynolds for the job. Harris informed Board Shannon Hollinger, that she believed the decision was tainted by discrimination because in that over five to six other occasions when the director position was vacant, no African Americans were selected for the Librarian position.[12] Prior to termination, Harris was only permitted to work the position holding the title of Interim Librarian for approximately 20 months.

Crystal Reynolds was the selected candidate.  However, Reynolds declined the job.[13]  The 2nd place applicant was Brenda Taite, who had filed an EEOC charge over

---

[9] Doc. 94-4 Harris Dep. pg. 68:21-2.
[10] Doc. 94-4, pg. 89-92 Harris application letter and resume.
[11] Doc. 94-4, pg 33 Harris Dep. pg. 95:6-12.
[12] Doc. 94-4, pg. 48 Harris Dep. pg. 110:1-8.
[13] Doc. 94-5, pg. 1 Pridgen ¶5.

the selection process and the board declined further consideration of her.  Harris

continued as the Interim Librarian.[14]

In 2016, period newly appointed Board Member Steve Stacey, at the request of

the Greg Norris, Chairman of the Monroe County Commission, launched an

investigation of the library accounting practices going back 5 years from (2011-

2015).[15]  Ultimately, the library was audited by a local accounting firm who

determined that there were some transactions were not supported by receipts over the

five-year period.  The Board then called the District Attorney who investigated the

matter.

The District Attorney determined, "There was some sloppy bookkeeping and

questionable expenditures, but these issues are more in the nature of unwise

management decisions and supervision, rather than fraudulent or illegal."[16]

In April 2017, Board Member Steve Stacey, put together a program to hold at

the library to celebrate the Confederate History Month. The program flier carried the

headline, "Celebrate Confederate Memorial Day with the Sons of Confederate

Veterans, Camp 1610, of Monroe County." [17]

---

[14] Doc. 101-3, pg. 9-10 Pridgen Powell Dep. 109:21-23, 110:1-22.
[15] Doc. 94-3, pg. 1 Stacey Dec. ¶4-5.
[16] Doc. 94-3, pg. 18 News Release.
[17] Doc. 101-2, pg.1 Confederate History Month Flier.

The program was scheduled to be held twice at 10:30 A.M. and 2:00P.M. and featured lectures by Mr. Stacey, Past Commander SCV Camp 1610 and by Frank Peirce Commander, SCV Camp 1610. Commander Pierce's lecture was titled, "CSA Cavalry Equipment & Arms with Discussion of 7th Alabama Cavalry in Forrest's Command". Id.   General Nathan Bedford Forrest was a prominent Confederate Army general confederate veteran and considered the first Grand Wizard of the Ku Klux Klan.[18]

Stacey explained that the Sons of the Confederate Veterans, "Those are descendants of men who served in the Confederate Army".[19] Stacey belongs to the Raphael Semmes Camp.[20]  The descendants of the Confederate veterans carry on holding military titles such as commander. Stacey, a former Commander, explained there was a dedicated camp in Monroeville which had to close due to lack of attendance at the meetings.[21]. Stacey had organized a past Confederate Memorial Day but not on this scale of this one.[22]

Stacey agrees that at least one patron Greg Marshall was upset and confronted Stacey about the program. [23]Stacey did not believe Marshall had a right to stop a

[18] https://en.wikipedia.org/wiki/Nathan_Bedford_Forrest
[19] Doc. 101-1, pg. 2 Stacey pg. 29:16-20
[20]  Id. Stacey pg, 30:6-22.
[21] Doc. 101-pg. 4 Stacey dep. pg. 31:8-23.
[22] Id. Pg. 34, Stacey dep. pg. 34:22-23, pg. 35:1-2.
[23] Id. Stacey dep. pg. 40, 41.

Confederate event from being held at the library as he did not protest Black History

Month and protest.[24]  According to Stacey, "almost all of those in attendance are

descended from a confederate veteran." Stacey pg. 42:13-19. Stacey blamed

Marshall's objections on his insecurities. Stacey pg. 97:7-18.

Harris testified that she felt threatened during the program and was called the

N word by one patron and from her perspective that the program was hostile to

minorities.[25]

Harris filed an EEOC charge.  Based on the allegations of the charge, the

Board terminated her employment.


"Mrs. Harris when we received the EEOC complaint and read where you stated that
there were 70 known affiliates of the KKK present, we were shocked.  Women
cannot be members of the KKK.  The individuals that attended the program, mostly
women, are upset and angry they are planning to seek legal recourse for defamation
of character.  A lot of these individuals are business owners in our community and
some of them they were your friend. Therefore, we (the board) have no choice but to
terminate your employment effective today.  You will need to get your personal
belongings before you leave along with your key.  You will be paid for the month of
September.

Ann Pridgen
Jerome Sanders
Steve Stacey
Shannon Powell[26]

---

[24] Id. pg. 9 Stacey dep. pg. 41.
[25] Doc. 94-4, Harris Dep pg. 71-78.
[26] Doc. 94-3, pg. 31 Termination Letter.

Q.  When you said come into the meeting, did you say we're planning to terminate

you, and we need to know your story or we need to know what

 happened? What do you recall saying to her?

    A. At that time, I didn't know we

we're going to terminate her. I just asked her to rejoin the meeting.

Q. Okay. And then when it says in
here that -- you said you had complaints
from the community about the -- about the
EEOC charge?

A. Yes, about what she stated in the 3 EEOC charge.
Q. And what do you recall her saying in
the EEOC charge?

A. I recall her saying that she --
that we had this Confederate History
program at the library, and 70 known
members of the KKK attended. This was what concerned our patrons.

Q. And who was telling the patrons about the
contents of the EEOC charge that you know of?

A. They read it in the paper.

Q. Which paper? The Monroeville 16 Journal?

A. Monroe County Journal.[27]

_____

[27] Doc. 101-3, pg. 43, Pridgen Dep. pg. 45-46.

Harris's EEOC charge used the term affiliates, not members. Chairwoman Ann Pridgen testified that Mr. Stacey was more upset about Harris's charge as he was a presenter, and his wife was in attendance.[28]

Harris had support in her quest to be the official library director submitted letters from community and prior board members. Former Bandmember J. Milton Coxwell Jr, related, "It is my opinion that Mrs. Harris has been a good and faithful employee, and would render capable and dedicated service as Library Director." [29] Harris was not appointed and continued to work as the Interim Librarian.

---

[28] Doc. 101-3, pgs. 7-8 Pridgen Dep 54:17-23, pg.55:-1.
[29] Doc. 100, pgs. 8-9. Letter from J. Milton Coxwell to Monroe County Library Board. Undersigned counsel quoted this letter in opposing summary judgment cited but failed to include the pdf in the evidentiary submission. Counsel will be filing a motion to supplement the record and request permission include it in the appendix filing.

"The first sign of trouble was when visiting with the kids, we all witnessed Ms. Harris being (what we call in the corporate world) chewed out in the middle of the library main lobby. It appeared as though her 'boss' had a problem with the particular printer model that was to be ordered. Here are my children watching a public figure whom they has learned to respect greatly being chastised publicly by a person wearing flip flops. I was taken aback by this sight. This would never happen in a professional environment. This was not the place to handle such a meeting. It was after this that we noticed the environment of the library changed as this flip flop and shorts wearing individual turned out to be Mr. Steve Stacey a member of the commission that regulates the library. Mr. Stacey started coming around the library more and more. And as he did the library experience became more corrupt." [30]

## III. STANDARD OF REVIEW

### A. Statement of Standard of Review

The grant or denial of summary judgment is reviewed *de novo*. *B&G Enters., Ltd. v. United States,* 220 F.3d 1318, 1322 (11th Cir. 2000); T*hornton v. E.I. Du Pont de Nemours & Co.,* 22 F.3d 284, 288 (11th Cir. 1994). Summary judgment is appropriate if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Whatley v. CNA Ins. Co.,* 189 F.3d 1310, 1313 (11th Cir. 1999). The court must view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. *St. Charles Foods, Inc. v. America's Favorite Chicken Co.,* 198 F.3d 815, 819 (11th Cir. 1999).

---

[30] Id.

With respect to Monroe County's Motion to Dismiss, the standard is also *de novo*. See *Hopper v. Solvay Pharmaceuticals, Inc.,* 588 F.3d 1318, 1324 (C.A.11 (Fla.),2009) ("We review de novo the grant of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted."

## B. **Legal Argument**

### 1. **Summary of Argument**

Harris's appeal is restricted to her 14th Amendment termination based on failure to provide due process as well as race discrimination and retaliation. Harris is not pursuing the promotion claims or the dismissed ADEA claim.

The termination claim is due to be re-instated because Harris presented direct evidence in the form of the letter that she was being terminated for the statements in her EEOC charge and prior to termination as a public employee Harris should have received a pre-termination hearing.

If the case is revived, then the Monroe County should be re-instated as a defendant. On a minimally developed record, evidence was submitted that the Monroe County Commissioners engaged in supervision of the library and asked Board Member Stacey to investigate past accounting practices over 2011-2015 time. Thus, the Library Board did not operate free from County Board influence.

## 2. Harris Did Not Receive Procedural Due Process

The District Court held Harris did not have a right to a pre-termination hearing.[31]  Among the reasons cited was that Harris understood that her employment was at will, her employment could be terminated at any time and her termination could be without cause.[32]

However, analysis rights to a pretermination hearing and whether there is disputed issue to require a hearing is not limited to Harris's legal understanding.  The Amendments to the Monroe County Library Board's Articles of Incorporation state,

"**III. Employees**

The Corporation shall have the power to engage and compensate employees for the day-to-day operation of the Corporation's facilities and programs, and any such operation shall be deemed public employees, and entitled to all benefits and privileges generally afforded public employees in the state of Alabama." [33]

As a public employee Harris had a property interest in her job.  In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542-543, (1985), "The Supreme Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542-543, (1985)Court held that tenured government employees almost always must be afforded at least a

---

[31] Doc. 105, pgs. 12-17. Memorandum Opinion and Order.
[32] Id. At pg. 14.
[33] Doc. 94-2, pg. 2 Amendments to the Articles of Incorporation of Monroe County Library Board.

limited pretermination hearing before they can be constitutionally terminated. 470 U.S. at 542–43, 105 S.Ct. 1487." cited in *City of Orange Beach v. Duggan*, 788 So.2d 146, 152 (Ala.,2000).

Harris did not have a pretermination hearing. Board Chairwoman Ann Pridgen testified that when Harris was asked and declined to participate a Board meeting, it was not to discuss her termination.[34]  If Pridgen did was unaware that termination was in the cards, Harris could not be expected to know that meeting she was a pretermination hearing.

Q: When you said you wanted her to rejoin the meeting, did you say we're going to terminate you, and we need to know your story or we need to know what happened.

A: At that time, I didn't know we were going to terminate her.  I just asked her to re-join the meeting.[35]

The District Court further held even if Harris had a property right that justified a pre-termination hearing, she received one in the form of the invitation to the Board meeting.  Harris testified that she called her lawyer at the time (not undersigned) who related, "I am not in town do not attend that meeting."  As the Ann Pridgen, Board chairwomen and part of the decision-making body, did not know the meeting was to

---

[34] Doc. 101-3, gp. 7, Pridgen Dep. 54:7-13.
[35] Doc 101-3, pg. 2, Harris Dep. pg. 54:12-20.

16

consider Harris's termination, genuine issues of material fact were raised whether

Harris received a proper pre-termination hearing.  In granting summary claim the

Court credits Harris testimony, "she kind of felt like that was going to take place."[36]

Traditionally, plaintiff's testimony about their feelings in discrimination cases

is not the deciding factor. See *Raybon v. Alabama Space Science Exhibit*

*Commission,* 337 F.Supp.3d 1153, 1172 (N.D.Ala., 2018)("Stated somewhat

differently, a plaintiff's subjective feelings and personal reactions are not the

complete measure of whether a contested employment action is sufficiently

"adverse" to be actionable under federal employment discrimination statutes.")

**Harris's Terminated For Her EEOC Charge Statements**

Harris presented the Board termination letter which stated that she was being

fired for the allegations in her EEOC charge that 70 known affiliates of the KKK

attended the celebrate Confederate Memorial Day with the Sons of Confederate

Veterans, Camp 1610 of Monroe County.[37]

 The District Court held plaintiff presented insufficient evidence under either

the *McDonnell–Douglas* framework or a convincing mosaic standard to survive

summary judgment.[38]  Here, Harris offered direct evidence of discrimination.

---

[36] Doc. 105, pg. 16 Memorandum Opinion and Order,
[37] Doc. 101-2, pg. 1, Confederate History Month, Doc. 94-3, pg. 31 Termination Letter.
[38] Doc. 105 Memorandum Opinion pg. 23-33.

Direct evidence in the employment discrimination context is evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic. *Wright v. Southland Corp.*, 187 F.3d 1287, 1298 (11th Cir. 1999). It is not evidence that, if believed, proves the existence of a fact in issue without inference or presumption. Id. In *Wright v. Southland*, the Eleventh Circuit examined several cases where it had held that certain statements constituted direct evidence of discrimination. *Wright*, at 1295-98. In each of the cases cited approvingly by the Eleventh Circuit, comments that constituted direct evidence required the hearer to make at least one inference to connect the dots between the comment and the protected personal characteristic. Id.

In examining the contours of what constitutes "direct evidence" the Court held the following: a statement that (1) is by the employer (i.e., by the decisionmaker), (2) reflects a discriminatory attitude, and (3) ties the discriminatory attitude to the relevant employment decision, will generally be sufficient evidence for a trier of fact to conclude more probably than not that the employment decision was based on improper discrimination.

18

*Wright*, at 1294.  Harris was terminated because of her EEOC charge allegations which raised the race discrimination making the *McDonnell Douglas* analysis inapplicable.

Harris signed the EEOC statement based on what the EEOC representative prepared.[39]  Harris's belief of KKK affiliates stemmed from being called the N word, the rudeness of people, and presence of Confederate flags gave Harris the perspective that the organization was affiliated with the Klan.[40]  Stacey explained that the Sons of Confederate Veterans organization is restricted to descendants who served in the confederate war.  There is a recognized crossover between SCV members and hate groups such as the KKK.  https://www.splcenter.org/fightinghate/intelligence-report/2010/sons-confederate-veterans-members-also-hategroups.

There is also a documented but often undiscussed history of racial tension in Monroeville, Alabama which Stacey disputes the attempts to memorialize. See Tucker, Cynthia, *In the Hate of Dixie, Bitter Southerner*. https://bittersoutherner.com/in-the-hate-of-dixie-monroe-county-lynchings

The Board's letter reflects that they were upset by the EEOC charge and the allegation that there were known affiliates of the KKK in attendance at the Sons of the Confederate Veterans' Commanders lectures.   The Board challenged assertion

---

[39] Doc. 94-4, pg. 78-79, Harris Dep. pg. 219:21-23, 220:1-23.
[40] Doc. 94-4, pg. 78, 79 Harris Dep. pg. 220:17-23, pg. 221:1-3.

Harris's statement which the Board states failed to account the KKK's exclusion of women from membership.

The second lecture by SCV Commander Pierce commemorated the strategies of Bedford Forrest who later became the first KKK's First Grand Wizard. Ex. Confederate History Month Flyer Stacey Dep Ex. 4.[41]  Reviewing the matter from Harris', an African American, perspective if the descendants of an organization whose membership is restricted to descendants of Confederates Army are gathering in the town library to celebrate Confederate Memorial Day raised Harris's concern and she received complaints from the black patrons.  Harris observed a conflict between Greg Marshall, an African American patron who complained about the program. The library had never held a Confederate History month program.

Meriam Webster dictionary defines an affiliate, "1a: to bring or receive into close connection as a member or branch The medical school is affiliated with a hospital. b: to associate as a member affiliates herself with the local club 2: to trace the origin of affiliated Shakespeare's "Hamlet" to earlier plays"

https://www.merriam-webster.com/dictionary/affiliate

Terminating Harris for protesting the Sons of Confederate Veterans' program (never held before in the town library prior to Mr. Stacey's board

_____

[41] https://www.britannica.com/biography/Nathan-Bedford-Forrest.

20

appointment and celebrate of Confederate History Month) raises questions of material fact for trial.

### 3. <u>The Equal Protection Retaliation Claim is Due to be Re-Instated</u>

Harris's Equal Protection Retaliation Claim was dismissed as not being cognizable under the 14th Amendment**.**  Race discrimination has long been held to violate the Equal Protection Clause. See *University of California Regents v. Bakke,* 438 U.S. 265, 291, (1978). "Racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination." "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239, (1976)…. "When there is a proof that a discriminatory purpose *266 has been a motivating factor in the decision, this judicial deference is no longer justified. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66, 97 S. Ct. 555, 563, 50 L. Ed. 2d 450 (1977)

In this case, the Board unquestionably cited Harris's objection filed through her EEOC charge to the Confederate Memorial history month celebration held at the government funded library as the basis for her termination.

The Supreme Court, in *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 173–74 (2005) held that "Retaliation is, by definition, an intentional *174 act. It is a

form of "discrimination" because the complainant is being subjected to differential

treatment"".

The 2nd Circuit cited *Jackson v. Birmingham Bd of Education* and concluded

that retaliation claims do fall under the Equal Protection clause and explains,

> Retaliation against a person because that person has complained of sex
> discrimination is another form of intentional sex discrimination encompassed by
> Title IX's private cause of action. Retaliation is, by definition, an intentional act.
> It is a form of "discrimination" because the complainant is being subjected to
> differential treatment. Moreover, retaliation is discrimination "on the basis of
> sex" because it is an intentional response to the nature of the complaint: an
> allegation of sex discrimination. We conclude that when a funding recipient
> retaliates against a person *because* he complains of sex discrimination, this
> constitutes intentional "discrimination" "on the basis of sex," in violation of
> Title IX. *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 173–74, 125 S.Ct.
> 1497, 161 L.Ed.2d 361 (2005) (citations omitted). This reasoning applies with
> equal force to the employment context. When a supervisor retaliates against an
> employee because he complained of discrimination, the retaliation constitutes
> intentional discrimination against him for purposes of the Equal Protection
> Clause.

*Vega v. Hempstead Union Free School Dist*., 801 F.3d 72, 82 (C.A.2

(N.Y.),2015.

The opinions cited by the defendants and relied in the lower court *Watkins v.*

*Bowden,* 105 F. 1344, 1354 (11th Cir. 1997)(citing *Ratliff v. DeKalb County* 62 F.3d

338, 340 (11th Cir. 1995) predate the Supreme Court's 2005 decision in *Jackson*.[42]

---

[42] Doc 105, pg. 29, 30. Memorandum Opinion and Order

As Jackson (reviewed on a Motion to Dismiss) held, "At this stage of the proceedings, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *Jackson v. Birmingham Bd. of Educ.,* at 1510.

With the Board's Termination letter, Harris offers direct evidence of retaliation for a jury to consider.

4. <u>**Monroe County is a Proper Defendant or at least questions of Fact are Raised for Trial**</u>

If this Court determines that issues remain for trial, Harris seeks review of the dismissal of the Monroe County Commission as a named defendant. Monroe County's Motion to Dismiss was successful and the county was dismissed at the outset. Harris unsuccessfully objected to the Report and Recommendation. The District Court affirmed the finding.

In arguing for dismissal, the Monroe County Commission relied on *Oaks v. City of Fairhope*, 515 F. Supp., 1004 (S.D. Ala 1981) stressing the factor that under Alabama law, the city had "absolutely no control over Library employment practices and policies." *Id.* at 1036.[43]

---

[43] Doc. 16 pg. 6-7. Monroe County Commission Brief.

The library board's creation authorized by state law and charged with the day-to-day operation of the library does not immunize the county from potential liability. In *Cobb v. Montgomery Library Bd.*, 207 F. Supp. 880, 882 (M.D. Ala. 1962), Judge Johnson explained the City of Montgomery's power to select their library board created pursuant to state law made the three City of Montgomery Commissioners appropriate responsible parties.

The *Cobb* decision not decided on a motion to dismiss but rather, "….upon the pleadings, stipulations of the parties, depositions, oral testimony of witnesses taken before the Court, the exhibits to said testimony, and the briefs of the several parties filed at the conclusion of the hearing. *Cobb* at 881 was not decision on a Motion to Dismiss.

The United States Supreme Court precedent holds that a government body can be liable for a single decision.  See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298–99, 89 L. Ed. 2d 452 (1986)(liability may be imposed for a single decision made by a proper constituted legislative body … citing *Owen v. City of Independence*, 445 U.S. 622, "City

Unknown to Harris at the time of the complaint was filed, Steve Stacey had been asked by the President of the Monroe Commission and another Commissioner

to investigate library finances.[44]  An independent auditor was hired, and the matter was referred to the Monroe County District Attorney.  Harris was subpoenaed. Ultimately, the Monroe County District Attorney declined to take any action, "There was some sloppy bookkeeping and questionable expenditures, but these issues are more in the nature of unwise management decisions and supervision, rather than fraudulent or illegal."[45]  Harris was not the Librarian nor the bookkeeper at during the 2011-2015 period of investigation.  Stacey believed Harris and Rochester, her husband (who did yard work and maintenance) were improperly paid.[46]

After the investigation concludes in August 2017, without criminal findings, and Harris's termination decision was made by the Monroe County Commission's (duly appointed and selected Library Board of Trustees).  Following Harris's receipt of Harris's EEOC charge, the Board terminated her employment.

As reflected in the written letter, the termination was "an official act" made by "we" the board.  "Therefore, we (the board) have no choice but to terminate your employment effective today. That board is appointed exclusively by the Monroe County Commission.

---

[44] Doc. 94-3, pg.1,2, ¶5-6 Declaration of Steve Stacey
[45] Doc.94-3, pg. 18 NEWS RELEASE
[46] Doc. 94-3, pg. 1, ¶4, Stacey Declaration.

The controversy is enshrouded in race questions as Harris objected to a Confederate History Month celebration held at the library.

As discussed, infra, public employees in Alabama are entitled to a pre-termination hearing.  See *Galbreath v. Hale Cty., Alabama Comm'n*, 754 F. App'x 820, 825 (11th Cir. 2018)("A government employer cannot terminate an employee who possesses a state-created property interest in employment without due process, including a pretermination opportunity to respond. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 545, 105 S.Ct. 1487, 1491, 1495, 84 L.Ed.2d 494 (1985).)"

Factors other than the existence of a separate Library Board are due to be considered to determine if a joint employer status with the Monroe County Commission to satisfy the minimum number of employees for Title VII coverage.

*Lyes v. City of Riviera Beach Florida*, 166 F.3d. 1332, 1341 (11th Cir. 1999), cited in the Report and Recommendation, explains:

To summarize, we hold that when assessing whether multiple governmental entities are a single "employer" under Title VII, we begin with the presumption that governmental subdivisions denominated as separate and distinct under state law should not be aggregated for purposes of Title VII. That presumption may be rebutted by evidence establishing that a governmental entity was structured with the purpose of evading the reach of federal employment discrimination law. Absent an evasive purpose, the presumption against aggregating separate public entities will control the inquiry, unless it is clearly outweighed by factors manifestly indicating that the public entities are so closely interrelated with respect to control of the

fundamental aspects of the employment relationship that they should be counted together under Title VII.

*Lyes v. City of Riviera Beach, Fla.,* 166 F.3d 1332, 1345 (11th Cir.), <u>judgment entered,</u> 169 F.3d 1322 (11th Cir. 1999)

The analysis does not stop with whether evasive purpose is present.

"Even absent an intent to evade the application of federal law, we will aggregate two or more governmental entities and treat them as a single Title VII "employer" where other factors so plainly indicate integration that they clearly outweigh the presumption that the entities are distinct. In order to determine which factors should be considered in deciding whether the plaintiff has *1345 carried her burden of showing that the presumption has been clearly outweighed, we look to the factors courts have considered in Title VII cases involving private employers.

*Lyes v. City of Riviera Beach, Fla.,* 166 F.3d 1332, 1344–45 (11th Cir.), <u>judgment entered,</u> 169 F.3d 1322 (11th Cir. 1999)

Florida has applicable to state laws to prevent discrimination.  Alabama does not have state laws prohibiting race discrimination. *Lyes* was also resolved at summary judgment, after discovery.  Harris did not have the opportunity to develop evidence (other than submitted by Mr. Stacey) in accordance with the factors used with respect to private employers.

Without the benefit of the single employer, Harris had no Title VII protection as the library board did not have the requisite minimum number of employees to

## **CONCLUSION**

Harris requests that the summary judgment and motion to dismiss decisions be vacated and the case remanded for trial.

Respectfully submitted,

/s/Lee Winston
Lee D. Winston

**OF COUNSEL**
WINSTON COOKS, LLC
420 20th Street North, Suite 2200
Birmingham, AL 35203
205.482.3551

## CERTIFICATE OF TYPE-VOLUME COMPLIANCE

Counsel hereby certifies that this brief complies with Fed.R. App. P. 32(g)(1), in that excluding footnotes (in 12-point font) it was prepared in Times New Roman, 14-pt. font using and the total word count, as determined by the word processing system used, is 4,893 words.

*/s/Lee Winston*
Lee Winston
Of Counsel

28

## **CERTIFICATE OF SERVICE**

     I hereby certify that on this 31st day of October  2022 I filed a true and correct copy of the foregoing via the Court's Electronic Filing System which will notify the  counsel of record for Defendants:


                                       */s/ Lee D. Winston*
                                       OF COUNSEL