No. 22-11236-GG

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

MARY HARRIS,

*Plaintiff-Appellant,*

v.

MONROE COUNTY PUBLIC LIBRARY BOARD OF TRUSTEES, ET AL,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Alabama, Southern Division
1:19-cv-00265-CG-N

APPELLEES' ANN PRIDGEN, SHANNON POWELL, JEROME SANDERS &
MONROE COUNTY LIBRARY BOARD'S BRIEF

Peter S. Mackey
Burns, Cunningham & Mackey, P.C.
Post Office Box 1583
Mobile, Alabama 36633
(251) 432-0612
*Counsel for Appellees,*
Monroe County Public Library Board
of Trustees, Ann Pridgen, Shannon
Powell and Jerome Sanders

November 30, 2022

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel for the Appellees Monroe County Public Library Board of Trustees, Ann Pridgen, Shannon Powell and Jerome Sanders hereby respectfully submits this Certificate of Interested Persons and list the following entities/persons as parties in the above proceeding:

1.    Benton, T. Hart, III, Counsel for Appellee Steve Stacey

2.    Frawley, Jamie Helen Kidd, Counsel for Monroe County Commission

3.    Granade, Callie V.S., Senior U.S. Magistrate Judge

4.    Harris, Mary, Appellant

5.    Mackey, Peter S., Counsel for Appellees Monroe County Public Library Board of Trustees, Ann Pridgen, Shannon Powell and Jerome Sanders

6.    Monroe County Commission

7.    Monroe County Public Library Board of Trustees, Defendant/Appellee

8.    Myles, Russel, Counsel for Appellee Steve Stacey

9.    Nelson, Katherine, U.S. District Court Judge

10.    Powell, Shannon, Defendant/Appellee

11.    Pridgen, Ann, Defendant/Appellee

12.    Sanders, Jerome, Defendant/Appellee

13.    Stacey, Steve, Defendant/Appellee

14.    Winston, Lee D., Counsel for Appellant

i

## CORPORATE DISCLOSURE STATEMENT

Appellees  Ann Pridgen, Shannon Powell and Jerome Sanders are private citizens and thus no corporate disclosures are required.

Appellee Monroe County Library Board, a non-profit corporation in Monroe County, Alabama, certifies that there are no parents, subsidiaries and/or affiliates of said party that have issued shares or debt securities to the public.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not request oral argument. The issues involved in this appeal are not unique and the law relating to them is well developed.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................................. i

Corporate Disclosure Statement ................................................................ ii

Statement Regarding Oral Argument ........................................................ iii

Table of Contents ...................................................................................... iv

Table of Authorities ................................................................................... v

Statement Regarding the Adoption of Briefs of Other Parties .................. 1

Jurisdictional Statement ............................................................................. 2

Issues Presented for Review ...................................................................... 3

Statement of the Case ................................................................................. 4

Statement of the Facts ................................................................................ 4

Summary of the Argument ........................................................................ 12

Argument and Citation of Authorities ...................................................... 13

    **I.**    **The District Court properly granted summary judgment on Appellant's claim for a violation of her 14th Amendment due process rights (Count I)** .............................................................. 13

    **II.**    **The District Court properly granted summary judgment on Appellant's discrimination claim relating to her termination (Count II)** ......................................................................................... 15

    **III.**    **The District Court properly granted summary judgment on n Appellant's claim for retaliation (Count III)** ...................... 18

Conclusion ................................................................................................ 18

Certificate of Compliance ........................................................................ 20

Certificate of Service ............................................................................... 21

# TABLE OF AUTHORITIES

**Cases:**                                                                      **Page**

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532,538 (1985) ..............................................................................13

*Godfrey v. Bellsouth Telecommunications, Inc.,*
    89 F.3d 755, 760 (11th Cir. 1996) ..................................................................17

*Hester,* 798 Fed. Appx 457 ......................................................................................17

*LaFleur v. Hugine*, 587 Fed. Appx. 536, 541 (11th Cir. 2014) ................................13

*Lewis v. City of Union City, Ga.,* 918 F.3d 1213, 1226 (11th Cir. 2019)................16

*Ratliff v. DeKalb County*, 6 F.3d 338, 340 (11th Cir. 1995) ....................................18

*Smith v. Lockheed-Martin Corp.,*
    644 F.3d 1321, 1325-1326 (11th Cir. 2011)............................................. 15-16

*Watkins v. Bowden,* 105 F.3d 1344, 1354 (11th Cir. 1997)......................................18

*Wofford v. Glynn Brunswick Mem'l Hosp.,* 864 F.2d 117, 120 (11th Cir. 1989).....14

## STATEMENT REGARDING THE ADOPTION OF BRIEFS OF OTHER PARTIES

Because the issues of all of the Appellees are aligned, Appellees Ann Pridgen, Shannon Powell, Jerome Sanders and Monroe County Library Board adopt the statement of the facts and the argument sections of Appellee Steve Stacey's brief to the extent that they are not already set out herein.

## JURISDICTIONAL STATEMENT

Appellees Ann Pridgen, Shannon Powell, Jerome Sanders and Monroe County Library Board, agree that Appellant's Jurisdictional Statement is complete and correct.

## ISSUES PRESENTED FOR REVIEW

1. The District Court properly granted summary judgment on Appellant's claim for a violation of her 14th Amendment due process rights (Count I).

2. The District Court properly granted summary judgment on Appellant's discrimination claim relating to her termination (Count II).

3. The District Court properly granted summary judgment on Appellant's claim for retaliation (Count III).

## STATEMENT OF THE CASE

### I.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW

Appellees Ann Pridgen, Shannon Powell, Jerome Sanders and Monroe County Library Board, agree that Appellant's Course of Proceedings and Disposition Below is complete and correct.

## STATEMENT OF THE FACTS

1.    The Monroe County Library Board (the "Library") is a non-profit corporation organized on December 28, 1981 in Monroe County, Alabama. [Doc. 94-1.] The Library is governed by a Board of Directors (the "Board"), consisting of five members who are selected by the County Commission of Monroe County, Alabama. [Doc. 94-2, PageID.513; Doc. 94-3, PageID.515, at ¶ 2] The Board's members serve four-year terms without compensation. [*Id.*] At all times relevant to this action, the Board and the Board alone exercised sole authority to hire and terminate Library employees. [Doc. 94-4, PageID.563, at p. 59:10–14.] In addition, no single member of the Board has the authority to terminate an employee. [*Id.* at PageID.564, p. 60:8–11.] Stacey also is not and has never been an employee of the Library. [*Id.*]

2.    Appellant began her employment with the Library in May of 1981 as Assistant Director. [Doc. 94-4, PageID.558, at p. 29:1] In or around 1996, her position changed to Children's Coordinator. [*Id.* at PageID.560, p. 31:9–16.]

4

3.      Following the retirement of the Library's then-existing Director Jaqueline Hines- Nobles, the Board appointed Appellant to serve as "Interim Director" of the Library in January 2016. [*Id.* at PageID.574, p. 91:9–11.] Appellant acknowledges her position as Interim Director was a temporary position until a permanent Director could be selected by the Board, and she understood that the Board ultimately could hire someone as Director other than her. [*Id.* at PageID.561, pp. 36:6–37:5.]

4.      In September 2016, the Library advertised in the Monroe Journal newspaper that it was accepting applications for the position of Director. [Doc. 94-5, PageID.640, at ¶ 3]. A true and correct copy of this advertisement is set forth below, and included a notation that the Board is an equal opportunity employer:

HIRING    DIRECTOR,    Monroe County Library. Qualifications: A high school education, preferable with some college, and at least five years library    experience.    Primary Functions: Under the direction of the Library Board of Trustees, develops, administers, supervises, and coordinates the work of the Library and staff, performs managerial duties related to personnel budget, collection development, building maintenance, and library operations and services in conformity of the policies established by the Board of Trustees. Send cover letter and resume' post-marked no later than September 29, 2016 to Monroe County Library, Board of Trustees, Monroe County Library, 112 Pineville Road, Monroeville, Al 36460. EOE

[Doc. 94-5, PageID.642.]

5.      On September 19, 2016, Appellant sent a resume and correspondence to the Board to "propose [her] candidacy for the position of Director with the

Monroe County Public Library, which was advertised in The Monroe Journal, on September 15, 2016." [Doc. 94-4, PageID.634.]

6.     The hiring process ensued, and Appellant received the October 28, 2016 letter and "learned that [she] had not been selected on October 28, 2016." [Doc. 94-4, PageID.590, at p. 107; Doc. 94-4, PageID.638.] Appellant also knew in 2016 that the position had been offered to a white candidate. [Doc. 94-4, PageID.591, at p. 108:7–14.]

7.     The chosen candidate ultimately declined to accept the offer of employment and the permanent Director position remained vacant until the Board could restart the application process anew. [Doc. 94-5, PageID.640, at ¶ 5.]

8.     The Library had a policy of hosting a program in conjunction with every State-recognized holiday. [Doc. 94-3, PageID.517, at ¶ 13.] Pursuant to this policy, the Library hosted events in conjunction with African-American History Month, which Appellee Stacey led in 2017 and assisted with in prior years. [*Id.*] Also pursuant to this policy, the Library hosted events in conjunction with Confederate History Month. [*Id.*] Accordingly, on April 24, 2017, the Library hosted two presentations featuring local history in conjunction with Confederate History Month. [*Id.*] Appellant acknowledges that Confederate History Month is a State-recognized holiday, and she was aware prior to the April 24, 2017 presentations that these presentations were held in conjunction with this holiday.

6

[Doc. 94-4, PageID.602–03, at pp. 199:14–200:23.]

9.    Appellee Stacey is a historian and moderated each of these April 24, 2017 presentations, which consisted of a 10:30 a.m. presentation entitled "History of Units Raised in Monroe County with a Discussion of Units Honored in Neighboring Counties with Men from Monroe," and a second presentation at 2:00 p.m. entitled "CSA Calvary Equipment and Arms with Discussion of the Alabama Calvary." [Doc. 94-3, PageID.517, at ¶ 13.] These programs consisted solely of presentations of matters of historical significance in Monroe County pertaining to the American Civil War, including a question and answer session where Library patrons asked Appellee Stacey questions about their ancestors' histories. [*Id.*] There was no mention of slavery, the Ku Klux Klan, or race whatsoever during either presentation. [*Id.*]

10.    The second presentation was attended by 70 individuals. [Doc. 94-4, PageID.611, at p. 208:2–6.] Appellant attended a portion of the second presentation but did not attend the first presentation. [*Id.* at PageID.607–09, pp. 204:6–206:7.] She testified that, during the presentation she observed, there were no racially derogatory terms used, there was nothing inappropriate stated, and "[n]othing during the program that [she] observed troubled" her. [*Id.* at PageID.610–11, 616, pp. 207:4–7, 208:1, 213:10–14.]

11.    On August 4, 2017, Appellant filed a Charge of Discrimination with the

EEOC alleging that "Mr. Stacy [sic] hosted a program at the Library to celebrate the Confederate Flag and over 70 participants showed up who are known Ku Klux Klan affiliates, which intimidated and frightened me." [*Id.* at PageID.638.]

12.    Appellant testified that she does not know whether anyone in attendance at the April 24, 2017 presentations were actually affiliates of the Ku Klux Klan, and that she did not know when she signed her Charge of Discrimination whether a single person who attended the presentations was actually an affiliate of the Ku Klux Klan. [*Id.* at PageID.624–25, pp. 221:19– 22, 222:5–10.] Instead, Appellant claims she believed that "over 70 participants showed up who are known Ku Klux Klan affiliates" because an individual used the n-word in her presence prior to the April 24, 2017 presentation she attended and because "no one really said . . . how do you think African-Americans are going to feel" about the presentations. [*Id.* at PageID.619, p. 216:8–16.] Appellant testified that the individual who used the n-word was not Stacey and was not affiliated in any way with the Library. [*Id.* at PageID.617, p. 214:12–19.] She also testified that she did not voice any concerns about the holding of the April 24, 2017 presentations to any Board member prior to the event. [*Id.* at PageID.607, p. 204:1–5.]

13.    In or around August 2017, Appellees learned that Appellant had filed a Charge of Discrimination that included an allegation that "over 70 participants

showed up" at the April 24, 2017 event "who are known Ku Klux Klan affiliates."
[Doc. 94-3, PageID.517, at ¶ 14.] Around this same time, Board members began to
receive complaints from patrons of the Library who were upset that Appellant had
described them as "known Ku Klux Klan affiliates." [*Id.* at ¶ 14.] The complaints
included:

> (a)    A letter from Loretta McKenzie dated September 8, 2017
explaining she "attended both sessions of the History Program on the Monroe
County Count Regiments in the Civil War," that she had "learned about the EEOC
complaint which alleges that '70 known members of the KKK' attended," and that
she was "highly offended, and extremely upset at the unjust accusation" [Doc. 94-
3, PageID.543]; and

> (b)    A letter from Ann M. Walker dated September 8, 2017
explaining that she "cannot express the anger first realized by [the] statement"
from Harris. [*Id.* at PageID.544.]

14.    In addition to these and other complaints, one patron threatened legal
action on account of Harris's allegation. [*Id.* at PageID.517, ¶ 14.]

15.     On September 11, 2017, Appellee Pridgen requested that Appellant
attend a Board meeting that was taking place that day. [Doc. 94-5, PageID.641, at ¶
6.] It was Appellee Pridgen's intention that, during this meeting, the Board would
have the opportunity to discuss with Appellant her allegations that "over 70

9

participants" in attendance at the Library's April 24, 2017 Confederate History Month program were "known Ku Klux Klan affiliates." [*Id.*] Appellee Stacey also understood that the issue of Appellant's allegation concerning "known Ku Klux Klan affiliates" would be discussed with her during this meeting. [Doc. 94-2, PageID.518, at ¶ 15.]

16.     Appellant agrees that her attendance at this meeting was requested by the Board. [Doc. 94-4, PageID.630, at p. 227:20–23.] She was present at the start of the meeting but refused to sit down and left shortly after it began. [*Id.*; Doc. 94-5, PageID.641, at ¶ 6.] Appellant testified that she could "sense something wasn't right," so she left the meeting to call her attorney who said "I'm not in town. Do not attend that meeting." [Doc. 94-4, PageID.629–30, at pp. 226:11–227:13.] Appellant further testified that she "did not attend that meeting," and that she was "advised not to attend that meeting." [*Id.* at PageID.630, p. 227:10–13.] Appellant also testified that she did not believe she had the opportunity to present her case to the Board at this meeting because she believed the Board had already decided to terminate her. [*Id.* at PageID.632, p. 229:2–13.] However, the Board had not decided prior to this meeting that Appellant should be terminated. [Doc. 94-4, PageID.641, at ¶ 6.]

17.     After Appellant left the meeting, Appellee Pridgen requested that Appellant return, but she refused. [*Id.*] The Board continued their meeting without

Appellant and all four Board members in attendance (Appellees Pridgen, Stacey, Shannon Powell, and Jerome Sanders (who is African American)) agreed to terminate Appellant's employment due to her allegation that over seventy patrons of the Library were "known Ku Klux Klan affiliates." [Doc. 94-3, PageID.518, at ¶ 15.]

18.     Following the Board's vote, Appellees Pridgen, Stacey, Powell, and Sanders presented Appellant with a letter terminating her employment due to her allegation that seventy patrons of the Library were "known Ku Klux Klan affiliates." [*Id.* at ¶ 16.] The Board also offered to continue to pay her through the month of September, and such payments were in fact made. [Doc. 94- 4, PageID.628–29, at pp. 225:23–226:3.] Appellant agrees that she was terminated "because of [her] allegations in [her] EEOC charge concerning affiliates of the Ku Klux Klan having attended the Confederate History Month program." [*Id.* at PageID.628, p. 225:10–19.]

19.     Appellant did not have an employment contract (or any contract of any kind) with Library and was never told she would be employed for life or for a certain period of time. [*Id.* at PageID.567–68, pp. 63:12–64:9.] Appellant acknowledges that she understood her employment with the Library was at-will, that she could be terminated at any time, and that she could be terminated with or without cause. [*Id.* at PageID.570–71, pp. 66:14–67:22.]

## SUMMARY OF ARGUMENT

Appellant's due process claim is due to be dismissed because Harris concedes she was an employee at-will and, therefore, had no constitutionally recognized property interest in her employment and, in any event, because Appellant was provided constitutionally sufficient process prior to her termination. Appellant's discrimination claims should also be dismissed because she cannot establish a prima facie case of discrimination and because she was terminated for legitimate and non-discriminatory reasons. Finally, Appellant's claim of retaliation fails as a matter of law because the Eleventh Circuit Court of Appeals has long recognized that the Equal Protection Clause does not provide for any such cause of action.

## I.    STANDARD OF REVIEW

The individual defendants Ann Pridgen, Shannon Powell and Jerome Sanders, and the Monroe County Library Board agree that the Appellant has accurately described the standard of review on this appeal.

## ARGUMENT AND CITATION OF AUTHORITIES

**I.    The District Court properly granted summary judgment on Appellant's claim for a violation of her 14th Amendment due process rights (Count I).**

Appellant claims that she suffered a due process violation in the face of the fact that she was an at-will employee. The law is quite clear, and has been for some time, that an at-will employee lacks a property interest in continued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). As the trial Court found, her employment status was undisputed:

> Plaintiff testified that she understood (1) her employment at the Library was at-will, (2) her employment could be terminated by the Library board at any time, and (3) her termination could be without cause.
> (Doc. 94-4 at 25-26; PageID.570-71).

Because Appellant had no property right, she was not entitled to due process in her termination. *LaFleur v. Hugine*, 587 Fed. Appx. 536, 541 (11th Cir. 2014).

Appellant claims that the amendments to the Monroe County Library's articles of incorporation, which state that library employees "… shall be deemed public employees and entitled to all the benefits and privileges generally afforded public employees in the state of Alabama" somehow confer a property interest. [Doc. 100 at 11; PageID.696 citing to Doc 94-2 at 2; PageID.514].

13

As the trial court noted, however, being a public employee does not, in and of itself, create a property interest and Appellant provided no facts or law to the contrary. [Doc. 105 at p. 22; PageID.799](citing *Wofford v. Glynn Brunswick Mem'l Hosp.*, 864 F.2d 117, 120 (11th Cir. 1989).

Even if she had a property interest, there was no due process violation. She was offered the chance to be heard and refused it. Although Appellant concedes that a hearing was held and that she voluntarily left the hearing prior to its conclusion, she claims that she did not really understand that she was about to be terminated and had the right to defend herself. [Doc. 100 at 11-12; PageID.696-697]. As the trial court noted, however, the undisputed facts belie that contention:

> Specifically, Plaintiff testified that she believed the Board had decided to fire her prior to the meeting. (*Id*. at 85-86; PageID.632-33) ("And prior to the firing me, they had changed the locks on the doors, so I kind of, like, felt like that this was going to take place" […] "I understood that that was the day that I was to be fired" […] "They had already made up in their minds that they were going to fire me…"). Further, while present at the meeting, she stated that she could "sense something wasn't right," so she left the meeting to call her attorney who said "I'm not in town. Do not attend that meeting." (*Id*. at 85; PageID.630. As a result, the undisputed facts establish that Plaintiff understood that nature of the meeting and chose to not participate in it. As a result, she cannot present a dispute of material fact as to whether she was afforded and denied an opportunity to be heard in violation of her due process rights. Therefore, even if Plaintiff had a property interest in her employment

14

> (which she did not) summary judgment remains
> appropriate as to Count I.

[Doc. 105 at pp. 16-17; PageID.793-794]

Accordingly, the trial court grant of the motion for summary judgment as to

Count I of her complaint is due to be affirmed.

## II.    The District Court properly granted summary judgment on Appellant's discrimination claim relating to her termination (Count II).

Appellant claims that she was unlawfully terminated from the Library on the

basis of race. The Eleventh Circuit outlined the *McDonnel Douglas* framework

relative to discriminatory termination claims in *Smith v. Lockheed-Martin Corp.*,

644 F.3d 1321 (11th Cir. 2011):

> The first step of the *McDonnell Douglas* framework requires
> the plaintiff to make out a case sufficient to withstand a
> motion for summary judgment (or a motion for judgment as
> a matter of law)—i.e., a "prima facie case." When, as here,
> the plaintiff claims that his employer discharged him on
> account of his race, he must establish four elements: (1) that
> he is a member of a protected class . . . ; (2) that he was
> qualified for the position he held; (3) that he was discharged
> from that position; and
>
> (4) that in terminating his employment, his employer treated
> him less favorably than a similarly situated individual
> outside of his protected class      If the plaintiff makes this
> showing, he raises a presumption that his race motivated his
> employer to treat him unfavorably.
>
> Once this presumption is raised, the burden then shifts to the
> employer to rebut it by producing evidence that the
> employer's action was taken for some legitimate, non-

15

discriminatory reason. If the employer meets its burden of production, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted and thus disappears.

Once the presumption of discrimination is rebutted, the inquiry proceeds to a new level of specificity, whereby the plaintiff must show the employer's proffered reason to be a pretext for unlawful discrimination. It is at this stage that the plaintiff's burden merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination. Thus, if a jury reasonably could infer from the evidence presented that the employer's legitimate justification is pretextual, the question becomes whether the evidence, considered in the light most favorable to the plaintiff, yields the reasonable inference that the employer engaged in the alleged discrimination.

644 F.3d at 1325–26 (internal quotations, citations, and formatting omitted).

Appellant failed to establish a prima facie case because she could not demonstrate that Appellees "treated [her] less favorable than a similarly situated individual outside of h[er]protected class." *Id.* at 1325. To establish this element of the *McDonnell Douglas* framework, the Eleventh Circuit requires that Appellant and her alleged comparators be "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019) (en banc).

Appellant could not identify a comparator that would support a *prima facie* case. In her deposition, she identified two groups of individuals she believes were treated more favorably than her: (i) Appellant Steve Stacey; and (ii) former Directors of the Library. The former has never been employed by the Library. Furthermore,

16

there is no evidence that any of the latter "engaged in the same basic conduct (or misconduct)," *Hester*, 798 Fed. Appx. at 457, for which Appellant was terminated—falsely accusing numerous Library patrons of being "known affiliates" of a white supremacist terrorist hate group.

Even if Appellant could establish a *prima facie* case of racial discrimination, summary judgment was properly granted. It is undisputed that Appellant was terminated for a legitimate, non-discriminatory reason: her conduct in baselessly accusing 70 patrons of the Library of being "known Ku Klux Klan affiliates"—a white supremacist terrorist hate group. Appellant acknowledges that she did not know when she made this accusation whether any of the 70 patrons were actually affiliates of the Ku Klux Klan. [Doc. 94-4, PageID.624–25, at pp. 221:19–22, 222:5–10.]

Though not raised in her opposition to the summary judgment, Appellant now argues that there is direct evidence of discrimination that should be considered. That argument was waived by Appellant's failure to raise the issue below. *Godfrey v. Bellsouth Telecommunications, Inc.,* 89 F.3d 755, 760 (11th Cir. 1996)

Accordingly, the trial court's grant of a summary judgment as to Count II of Appellant's complaint is due to be affirmed.

### III.    The District Court properly granted summary judgment on Appellant's claim for retaliation (Count III).

Finally, Appellant argues that summary judgment was improperly granted because she "was terminated for participating in the EEOC process and for opposing discrimination", and that the "Board's conduct was retaliatory in violation of the Equal Protection Clause". [ Doc. 51 at 10; PageID.315]. The law in the 11th Circuit is clear, however - a retaliation claim does not implicate the Equal Protection Clause and Appellant admitted as much in her brief in opposition to the motions for summary judgment, conceding that "[w]hile the weight of authority cited by the defendant is against Harris, the 2nd Circuit has concluded that retaliation claims do fall under the Equal Protection clause […]" [Doc. 100 at 17; PageID.702]. As the trial court noted, however, there is ample 11th Circuit law to the contrary. [Doc. 105 at 28-29; PageID.805-806].

The Eleventh Circuit Court of Appeals has long recognized that a "pure or generic retaliation claim... simply does not implicate the Equal Protection Clause." *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) (citing *Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995).

18

Accordingly, the trial court's grant of a summary judgment as to Count II of Appellant's complaint is due to be affirmed.

## CONCLUSION

For all of aforementioned reasons set out above, this Court should affirm the District Court's denial of summary judgment.

Respectfully submitted this 30th day of November 2022.

Respectfully submitted,

/s/ Peter S. Mackey
PETER S. MACKEY (MACKP4325)
PSMackey@bcmlawyers.com
*Counsel for Appellees,*
Monroe County Public Library Board of Trustees,
Ann Pridgen, Shannon Powell and Jerome Sanders

**OF COUNSEL:**
Burns, Cunningham & Mackey, P.C.
P. O. Box 1583
Mobile, Alabama 36633
(251) 432-0612 (Telephone)
(251) 432-0625 (Facsimile)

19

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)

I hereby certify that this brief, filed on behalf of Appellees Monroe County Public Library Board of Trustees, Ann Pridgen, Shannon Powell and Jerome Sanders, complies with Rule 32(g).  This brief contains 3,535 words.

/s/ Peter S. Mackey
PETER S. MACKEY
*Counsel for Appellees,*
Monroe County Public Library Board of Trustees, Ann Pridgen, Shannon Powell and Jerome Sanders

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have on the __30th_ day of November, 2022, filed the foregoing Brief with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

T. Hart Benton, III
tbenton@mcdowellknight.com
McDowell, Knight, Roedder & Sledge, LLC
11 North Water St., Ste 13290
Mobile, AL  36602

Lee D. Winston
lwinston@winstoncooks.com
2 N. 20th St., Ste 1330
Birmingham, AL  35203

/s/ Peter S. Mackey
PETER S. MACKEY
*Counsel for Appellees,*
Monroe County Public Library Board of Trustees, Ann Pridgen, Shannon Powell and Jerome Sanders