Docket No. 22-11236

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

## Mary Harris

*Plaintiff-Appellant*,

v.

## Monroe County Public Library Board of Trustees, et al

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Southern District of Alabama, Southern Division
District Court Case. No. 1:19-cv-00265-CG-N
Hon. Callie V. S. Granade

---

## BRIEF OF DEFENDANT-APPELLEE STEVE STACEY

T. HART BENTON, III, ESQ.
MCDOWELL KNIGHT ROEDDER &
SLEDGE, LLC
11 North Water St., Ste. 13290
Mobile, Alabama 36602
(251) 432-5300
*Counsel for Defendant-Appellee Steve Stacey*

*Mary Harris v. Monroe Cnty. Pub. Library Bd. of Trustees*, No. 22-11236

## CERTIFICATE OF INTERESTED PERSONS

Defendant-Appellee Steve Stacey, pursuant to Eleventh Circuit Rules 26.1-1–3, certifies that the following is a complete list of all trial judges, attorneys, persons, associations, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

Benton, T. Hart III, Counsel for Steve Stacey

Burns, Cunningham, & Mackey, P.C., Counsel for Defendants/Appellees Monroe County Public Library Board of Trustees, Ann Pridgen, Shannon Powell, and Jerome Sanders

Frawley, Jamie Helen Kidd, Counsel for Defendant/Appellee Monroe County Commission

Granade, Callie V. S., Judge, United States District Court for the Southern District of Alabama

Harris, Mary, Plaintiff/Appellant

Mackey, Peter S., Counsel for Defendants/Appellees Monroe County Public Library Board of Trustees, Ann Pridgen, Shannon Powell, and Jerome Sanders

McDowell Knight Roedder & Sledge, L.LC., Counsel for Steve Stacey

Monroe County Commission, Defendant/Appellee

Monroe County Public Library Board of Trustees, Defendant/Appellee

*Mary Harris v. Monroe Cnty. Pub. Library Bd. of Trustees*, No. 22-11236

Myles, Russell, Counsel for Defendant/Appellee Steve Stacey

Nelson, Katherine Magistrate Judge, United States District Court for the

Southern District of Alabama

Powell, Shannon, Defendant/Appellee

Pridgen, Ann, Defendant/Appellee

Sanders, Jerome, Defendant/Appellee

Stacey, Steve, Defendant/Appellee

Webb McNeill Walker P.C., Counsel for Defendant/Appellee Monroe County

Commission

Winston Cooks, LLC, Counsel for Plaintiff/Appellant

Winston, Lee D, Counsel for Plaintiff/Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Steve Stacey respectfully submits that oral argument is unnecessary to assist the Court in its determination. The uncontroverted facts and legal authority supporting the district court's decision granting summary judgment are clear from this brief and the record below.

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF THE ISSUES ........................................................ 2

III.  STATEMENT OF THE CASE ............................................................ 3

    A.    Course of the Proceedings Below ................................................ 3

    B.    Statement of Facts ....................................................................... 4

IV.   SUMMARY OF ARGUMENT .......................................................... 9

V.    ARGUMENT ..................................................................................... 11

    A.    The District Court Did Not Err in Concluding that Stacey is Entitled to Summary Judgment on Harris's Due Process Claim (Count I) ................. 11

        (i)    Harris was an at-will employee and had no constitutionally protected property interest in her employment. ................................... 11

        (ii)   The undisputed facts establish that Harris was, in any event, provided pre-termination due process. ................................................. 14

    B.    The District Court Did Not Err in Concluding Stacey is Entitled to Summary Judgment on Harris's Equal Protection Discrimination Claim (Count II). ......................................................... 18

        (i)    Harris forfeited her argument based on "direct evidence" of discrimination because it was not raised with the district court. ....... 18

        (ii)   There is no direct evidence of discrimination even if Harris had raised her theory before the district court. ........................................... 21

    C.    The District Court Did Not Err in Concluding that Stacey is Entitled to Summary Judgment on Harris's Retaliation Claim (Count III). ................. 24

        (i)    There is no cognizable claim for retaliation under the Equal Protection Clause .................................................................... 24

        (ii)   Even if a claim for retaliation existed under the Equal Protection Clause, it would be subject only to rational basis scrutiny ................ 31

VI.   CONCLUSION .................................................................................. 33

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Access Now, Inc. v. S.W. Airlines Co.*, 385 F.3d 1324 (11th Cir. 2004) .............................. 19

*Adams v. Bainbridge– Decatur Cnty. Hosp. Auth.*, 888 F.2d 1356 (11th Cir. 1989) ..... 11, 14

*Alford v. Consol. Govt. of Columbus, Ga.*, 438 Fed. Appx. 837 (11th Cir. 2011) ............... 31

*Barati v. Fla. Atty. Gen.*, 18-13998, 2021 WL 2911729 (11th Cir. July 12, 2021) .......... 32

*Beaver v. Rayonier, Inc.*, 200 F.3d 723 (11th Cir. 1999) ........................................................ 23

*Brackin v. Anson*, 585 Fed. Appx. 991 (11th Cir. 2014) ...................................................... 31

*Carmichael v. Chambers County Bd. of Ed.*, 581 F.2d 95 (5th Cir. 1978) ............................ 14

*Carper v. TWC Services, Inc.*, 820 F. Supp. 2d 1339 (S.D. Fla. 2011) ................................. 24

*City of Orange Beach v. Duggan*, 788 So. 2d 146 (Ala. 2000) ................................................. 13

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ........................................11, 13, 15

*Cooper v. Jefferson County Coroner and Med. Examr. Off.,* 861 Fed. Appx. 753 (11th Cir. 2021) ........................................................................................................................ 20

*Cooper v. Walker Cty. E-911*, 16-cv-1746 2018 WL 3585217 (N.D. Ala. July 26, 2018) 12

*Copley v. Bax Glob., Inc.*, 80 F. Supp. 2d 1342 (S.D. Fla. 2000) ........................................ 24

*Corley v. Mercedes-Benz U.S. Intl., Inc.*, 21-11986, 2022 WL 2345808 (11th Cir. June 29, 2022) ........................................................................................................................................ 19

*Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466 (11th Cir. 1991) ....................................... 33

*Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008) ......................................................... 30

*Ferrell v. Masland Carpets, Inc.*, 97 F. Supp. 2d 1114 (S.D. Ala. 2000) ............................. 24

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993).................................................. 33

*Galbreath v. Hale County*, 754 F. App'x 820 (11th Cir. 2018) ............................................ 13

*Hakki v. Sec., Dept. of Veterans Affairs*, 7 F.4th 1012 (11th Cir. 2021) ............................ 14

*Howard v. Wolff Broad. Corp.*, 611 So. 2d 307 (Ala. 1992) ............................................. 11, 12

*Hurley v. Moore*, 233 F.3d 1295 (11th Cir. 2000) .................................................................. 19

*Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333 (11th Cir. 2002), rev'd 544 U.S. 167 (2005) ................................................................................................................................. 25

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) ................................................... 25

*Kelly v. Howden*, 21-13573, 2022 WL 17259720 (11th Cir. Nov. 29, 2022) .................... 24

*Kilpatrick v. Tyson Foods, Inc.*, 268 Fed. Appx. 860 (11th Cir. 2008) ........................... 23, 24

*LaFleur v. Hugine*, 587 Fed. Appx. 536 (11th Cir. 2014) ..................................... 11, 12, 14

*Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301 (11th Cir. 2009) ............ 32

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ........................................................................... 16

*McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) ........................................................... 15, 17

*Merritt v. Dillard Paper Co.*, 120 F.3d 1181 (11th Cir. 1997) ........................................ 20, 23

*Morris v. Emory Clinic, Inc.*, 402 F.3d 1076 (11th Cir. 2005) .............................................. 23

*OPIS Mgmt. Res., LLC v. Sec'y, Fla. Agency for Health Care Admin.*, 713 F.3d 1291 (11th Cir. 2013) ............................................................................................................................ 19

*Price v. U. of Alabama*, No. 03-15511, 2004 WL 1253201 (11th Cir. Apr. 20, 2004) ..... 14

*Ratliff v. DeKalb County,* 62 F.3d 338 (11th Cir. 1995) ....................................................... 25

*Raybon v. Alabama Space Science Exhibit Commission*, 337 F. Supp. 3d 1153 (N.D.Ala., 2018) ................................................................................................................................... 17

*Robertson v. Riverstone Communities, LLC*, 849 Fed. Appx. 795 (11th Cir. 2021) ............ 24

*Rojas v. Florida*, 285 F.3d 1339 (11th Cir. 2002) ................................................................. 21

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011) ................................. 18, 20

iv

*Thorne v. Chairperson Fla. Parole Commn.*, 427 Fed. Appx. 765 (11th Cir. 2011) ............. 30

*Tsavaris v. Savannah L. Sch., LLC*, 847 Fed. Appx. 634 (11th Cir. 2021) ................. 20, 21

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) ........................................ 15

*Vacco v. Quill*, 521 U.S. 793 (1997) ...................................................................................... 30

*Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72 (2d Cir. 2015) ............................ 27

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ........................................................ 30

*Watkins v. Bowden*, 105 F.3d 1344 (11th Cir. 1997) ............................................................ 25

*Wilcox v. Lyons*, 970 F.3d 452 (4th Cir. 2020) ..................................................................... 27

*Williams v. Pryor*, 240 F.3d 944 (11th Cir. 2001) ................................................................ 32

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004) .................................... 21, 23

*Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999) ................................................ 23

## I.  **INTRODUCTION**

This action arises from Plaintiff-Appellant Mary Harris's ("Harris") termination from the Monroe County Public Library after she falsely accused over seventy library patrons of being "known Ku Klux Klan affiliates."  Following her termination, Harris filed suit against the library and its Board of Directors (upon which Defendant-Appellee Steve Stacey ("Stacey") formerly served) alleging her termination was in violation of: (i) the Due Process Clause of the Fourteenth Amendment because she was afforded no pre-termination hearing; and (ii) the Equal Protection Clause of the Fourteenth Amendment because she was terminated for her race and in retaliation for complaining of discrimination.  The district court granted summary judgment on each of these claims, which Harris now appeals.

The resolution of this case could not be more straightforward.  As the district court recognized, Harris was an at-will employee without any "property interest in her employment such that she would be entitled to a pre-termination hearing" under the Due Process Clause, and "even if Plaintiff had a property interest in her employment (which she did not)" she "cannot present a dispute of material fact as to whether she was afforded and denied an opportunity to be heard in violation of her due process rights."  As for Harris's discrimination claim, Harris appeals the district court's ruling arguing that she has presented "direct evidence" of discrimination—a theory that was never raised before the district court and that she forfeited as a result.  In any event, the facts cited by Harris in support of this newfound theory are plainly not "direct

evidence" of discrimination under this Court's clear precedent. Finally, as the district court explained, Harris's retaliation claim fails for the simple reason that "the Eleventh Circuit Court of Appeals has long recognized that a pure or generic retaliation claim simply does not implicate the Equal Protection Clause."

For these reasons and as set out more fully below, the district court was correct to grant summary judgment. Stacey respectfully submits that the Court should affirm.

## II.    STATEMENT OF THE ISSUES

1.    Did the district court correctly hold that Harris had no right to pre-termination due process because she was an at-will employee with no constitutionally protected property interest in her employment and that Harris was, in any event, provided constitutionally sufficient due process prior to her termination?

2.    Did Harris forfeit her argument that direct evidence of discrimination supports her claim for racial discrimination by failing to raise this argument in the court below, and even if Harris had timely raised this new argument, do the facts cited by Harris constitute direct evidence of discrimination?

3.    Should the Court reverse its precedent declining to recognize retaliation claims under the Equal Protection Clause, and if the Court were to now recognize such a claim have the defendants nonetheless satisfied rational basis scrutiny?

## III.    STATEMENT OF THE CASE

### A.    Course of the Proceedings Below

On July 15, 2020, Harris filed an Amended Complaint in the Southern District of Alabama asserting claims against Stacey and the other individual defendants (collectively the "Board Members") and the Library alleging: that her termination was in violation of the Due Process Clause (Count I); that she was discriminated against on the basis of her race in violation of the Equal Protection Clause based on two theories: (i) failure to promote Harris to Director of the Library in 2016; and (ii) termination of Harris's employment in 2017 after she accused patrons of the library of being "known Ku Klux Klan affiliates" (Count III); that she was retaliated against in violation of the Equal Protection Clause (Count IV); and that her termination was in violation of the Age Discrimination in Employment Act (Count IV).  [Vol. I, Tab 51.][1]  Harris also alleged a claim for defamation in Count V against Stacey.  [*Id.*]

On February 17, 2021, the district court entered an order striking Count IV as to the Board Members and Count V in its entirety.  Following the close of discovery, Stacey, the Library, and the other Board Members filed motions for summary judgment on the remaining claims on November 22, 2021 [Vol. II, Tabs 95, 96], which Harris opposed in an omnibus response filed on  January 3, 2022 [*id.* at Tab 100].  Stacey, the Library, and the other Board Members filed reply briefs on January

---

[1] Any record citations to "Vol. I" are in reference to the Appendix filed by Harris on November 7, 2022.   Any record citations to "Vol. II" are in reference to the Supplemental Appendix filed by Stacey.

18, 2022.  On March 16, 2022, the district court granted the motions for summary judgment and entered judgment for defendants on all counts.  [Vol I, Tab 105.]

As it relates to Stacey, Harris now appeals the district court's order insofar as it granted summary judgment on Count I, Count II (but only as to theory of discrimination based on Harris's termination), and Count IV.

## B.    Statement of Facts

The Monroe County Library Board (the "Library") is a non-profit corporation organized on December 28, 1981 in Monroe County, Alabama.  [Vol II, Tab 94-1.]  The Library is governed by a Board of Directors (the "Board"), consisting of five members who are selected by the County Commission of Monroe County, Alabama.  [*Id.* at Tab 94-2; Tab 94-3 ¶ 2.]  The Board's members serve four-year terms without compensation.  [*Id.* at Tab 94-3, ¶ 2]  Stacey was appointed to the Board in October 2016 and served until March 8, 2018.  [*Id.*]

Harris began her employment with the Library in May of 1981 as Assistant Director.  [*Id.* at Tab 94-4, p. 29:1]  Following the retirement of the Library's then-existing Director Jaqueline Hines-Nobles, the Board appointed Harris to serve as "Interim Director" of the Library in January 2016.  [*Id.* at p. 91:9–11.]  Harris did not have an employment contract (or any contract of any kind) with Library and was never told she would be employed for life or for a certain period of time.  [*Id.* at pp. 63:12–64:9.]  Harris testified that she understood her employment with the Library

was at-will, that she could be terminated at any time, and that she could be terminated with or without cause. [*Id.* at pp. 66:14–67:22.]

Prior to and during Stacey's tenure on the Board, the Library had a policy of hosting a program in conjunction with every State-recognized holiday. [*Id.* at Tab 94-3, ¶ 13.] Pursuant to this policy, the Library hosted events in conjunction with African-American History Month, which Stacey led in 2017 and assisted with in prior years. [*Id.*] Also pursuant to this policy, the Library hosted events in conjunction with Confederate History Month. [*Id.*] Accordingly, on April 24, 2017, the Library hosted two presentations featuring local history in conjunction with Confederate History Month. [*Id.*] Harris acknowledges Confederate History Month is a State-recognized holiday, and she was aware prior to the April 24, 2017 presentations that they were held in conjunction with this holiday. [*Id.* at Tab 94-4, pp. 199:14–200:23.]

Stacey is a historian and moderated each of these April 24, 2017 presentations, which consisted of a 10:30 a.m. presentation entitled "History of Units Raised in Monroe County with a Discussion of Units Honored in Neighboring Counties with Men from Monroe," and a second presentation at 2:00 p.m. entitled "CSA Calvary Equipment and Arms with Discussion of the Alabama Calvary." [*Id.* at Tab 94-3, ¶ 13.] These programs involved presentations on matters of historical significance in Monroe County pertaining to the American Civil War, including a question and answer session where Library patrons asked Stacey questions about their ancestors' histories. [*Id.*] There was no mention of slavery, the Ku Klux Klan, or race

whatsoever during either presentation. [*Id.*] The second presentation was attended by 70 individuals. [*Id.* at Tab 94-4, p. 208:2–6.] Harris attended a portion of the second presentation but did not attend the first presentation. [*Id.* at pp. 204:6–206:7.] Harris testified that, during the presentation she observed, there were no racially derogatory terms used, there was nothing inappropriate stated, and "[n]othing during the program that [she] observed troubled" her. [*Id.* at pp. 207:4–7, 208:1, 213:10–14.]

On August 4, 2017, Harris filed a Charge of Discrimination with the EEOC alleging that "Mr. Stacy [sic] hosted a program at the Library to celebrate the Confederate Flag and over 70 participants showed up who are known Ku Klux Klan affiliates, which intimidated and frightened me." [*Id.* at p. 93 of 94.] Harris testified in her deposition that she does not know whether anyone in attendance at the April 24, 2017 presentations were actually affiliates of the Ku Klux Klan, and that she did not know when she signed her Charge of Discrimination whether a single person who attended the presentations was actually an affiliate of the Ku Klux Klan. [*Id.* at p. 221:19– 22, 222:5–10.]

Instead, Harris claims she believed that "over 70 participants showed up who are known Ku Klux Klan affiliates" because an individual used the n-word in her presence prior to the April 24, 2017 presentation she attended and because "no one really said . . . how do you think African-Americans are going to feel" about the presentations. [*Id.* at p. 216:8–16.] Harris testified that the individual who used the

n-word was not Stacey and was not affiliated in any way with the Library.  [*Id.* at p. 214:12–19.]  Harris also did not voice any concerns about the holding of the April 24, 2017 presentations to any Board member prior to the event. [*Id.* at p. 204:1–5.]

In or around August 2017, Stacey learned that Harris had filed the Charge of Discrimination that included the allegation that "over 70 participants showed up" at the April 24, 2017 event "who are known Ku Klux Klan affiliates."  [*Id.* at Tab 94-3, ¶ 14.]   Around this same time, Stacey and other Board Members began to receive complaints from patrons of the Library who were upset that Harris had described them as "known Ku Klux Klan affiliates."  [*Id.*]  The complaints Stacey received included a letter from a patron named Loretta McKenzie dated September 8, 2017 explaining she "attended both sessions of the History Program on the Monroe County Count Regiments in the Civil War," that she had "learned about the EEOC complaint which alleges that '70 known members of the KKK' attended," and that she was "highly offended, and extremely upset at the unjust accusation " [*id.* at p. 29 of 31]; and a letter from a patron named Ann M. Walker dated September 8, 2017 explaining that she "cannot express the anger first realized by [the] statement" from Harris [*id.* at p. 30 of 31].  In addition to these and other complaints, one patron threatened legal action on account of Harris's allegation.  [*Id.* at ¶ 14.]

On September 11, 2017, Board Chair Ann Pridgen ("Pridgen") requested that Harris attend a Board meeting that was taking place that day.  [*Id.* at Tab 94-5, ¶ 6.] It was Pridgen's intention that, during this meeting, the Board would have the

opportunity to discuss with Harris her allegations that "over 70 participants" in attendance at the Library's April 24, 2017 Confederate History Month program were "known Ku Klux Klan affiliates." [*Id.*] Stacey also understood that the issue of Harris's allegation concerning "known Ku Klux Klan affiliates" would be discussed with her during this meeting. [*Id.* at Tab 94-2, ¶ 15.] Harris agrees that her attendance at this meeting was requested by the Board. [*Id.* at Tab 94-4, p. 227:20–23.] Harris was present at the start of the meeting but refused to sit down and left shortly after it began. [*Id.* at Tab 94-5, ¶ 6.] Harris testified that she could "sense something wasn't right," so she left the meeting to call her attorney who said: "Do not attend that meeting." [*Id.* at Tab 94-4, pp. 226:11–227:13.] Harris further testified that she "did not attend that meeting," and that she was "advised not to attend that meeting." [*Id.* at p. 227:10–13.] Harris did not believe she had the opportunity to present her case to the Board at this meeting because she believed the Board had already decided to terminate her. [*Id.* at p. 229:2–13.] However, the Board had not decided prior to this meeting that Harris should be terminated. [*Id.* at Tab 94-5, ¶ 6.]

After Harris left the meeting, Pridgen requested that Harris return, but Harris refused. [*Id.*] The Board continued their meeting without Harris and all four Board members in attendance (Pridgen, Stacey, Shannon Powell, and Jerome Sanders (who is African American)) agreed to terminate Harris's employment due to her accusation of over seventy patrons of the Library being "known Ku Klux Klan affiliates." [*Id.*

at Tab 94-3, ¶ 15.] It was Stacey's belief that Harris had demonstrated a complete disregard for the patrons and interests of the Library (which was in a precarious financial condition and depends on the financial support of its patrons) by making such an inflammatory allegation against its patrons that had no basis in fact, and that her conduct was detrimental to the Library's status and goodwill within the community. [*Id.*] It was this belief that motivated Stacey's decision that Harris should be terminated, and neither race nor any kind of discrimination played any role at all in Stacey's decision that Harris should be terminated. [*Id.* at ¶ 15–16.]

Following the Board's vote, Pridgen, Stacey, Powell, and Sanders presented Harris with a letter terminating Harris's employment due to her allegation that seventy patrons of the Library were "known Ku Klux Klan affiliates." [*Id.* at ¶ 16.] Harris agrees that she was terminated "because of [her] allegations in [her] EEOC charge concerning affiliates of the Ku Klux Klan having attended the Confederate History Month program." [*Id.* at Tab 94-4, p. 225:10–19.]

## IV.  <u>SUMMARY OF ARGUMENT</u>

A.  Harris's own deposition testimony leaves no doubt that she has no cognizable due process claim. Harris testified that she was an at-will employee and has offered no evidence otherwise so, as the district court correctly determined, under well-settled precedent there are "no facts to support that Plaintiff had a property interest in her employment such that she would be entitled to a pre-termination

hearing." [Vol. I, Tab 105 at p. 15.] Even if Harris did have a constitutionally protected property interest in her employment (and she did not), the undisputed facts establish that: (i) Harris was afforded the opportunity to be present at a Board meeting to discuss her defamatory accusations against library patrons but knowingly refused to attend on the advice of her counsel; and (ii) Harris admittedly understood that the purpose of that meeting was to discuss her potential termination. Accordingly, the district court correctly found that Harris "cannot present a dispute of material fact as to whether she was afforded and denied an opportunity to be heard in violation of her due process rights." [*Id.* at p. 17.]

B.      Harris argues the district court committed reversible error by entering summary judgment on her race discrimination claim because Harris contends she has "direct evidence" of discrimination. Harris never presented this argument to the district court and, instead, opposed summary judgment solely on the basis that there was a "convincing mosaic" of *circumstantial evidence* of discrimination—an argument the district court rejected. Harris forfeited the right to pursue a direct-evidence theory by failing to raise it below. In any event, each and every fact Harris cites is clearly circumstantial evidence under well-settled Eleventh Circuit precedent.

C.      Harris's claim for retaliation under the Equal Protection Clause is barred for the simple reason that no such cause of action exists under long-established Eleventh Circuit precedent. Harris offers no persuasive basis for the Eleventh Circuit to break new constitutional ground and reverse its precedent on this issue, which is in

contravention of precedent from the U.S. Supreme Court that would also preclude any such claim in the public employment context.

## V.    ARGUMENT

### A.    The District Court Did Not Err in Concluding that Stacey is Entitled to Summary Judgment on Harris's Due Process Claim (Count I).

#### (i)    Harris was an at-will employee and had no constitutionally protected property interest in her employment.

A claim for deprivation of due process in the employment termination context "depends on [the employee] having had a property right in continued employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).  Property right interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law"—here, Alabama law.  *Id.* "Employment in Alabama 'is terminable at will by either party for any reason unless there is an express and specific contract for lifetime employment or employment for a specific duration,'" and "'[a]t-will' employment may be terminated 'with or without cause or justification'" of the employer.  *LaFleur v. Hugine*, 587 Fed. Appx. 536, 541 (11th Cir. 2014) (quoting *Howard v. Wolff Broad. Corp.*, 611 So. 2d 307, 310 (Ala. 1992)). "Because an at-will employee does not have a property interest in continued employment, she is 'not entitled to procedural due process in connection with her termination.'"  *Id.* (quoting *Adams v. Bainbridge–Decatur Cnty. Hosp. Auth.*, 888 F.2d 1356, 1366 (11th Cir. 1989)).

The Alabama Supreme Court has explained that an employee "bear[s] a heavy

burden of proof to establish that an employment relationship is other than 'at will.'" *Howard*, 611 So. 2d at 310–11.  To defeat the at-will presumption, an employee must prove three conditions: "(1) that there was a clear and unequivocal offer of lifetime employment or employment of a definite duration, (2) that the hiring agent had authority to bind the principal to a permanent employment contract; and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered."  *Cooper v. Walker Cty. E-911*, 16-cv-1746, 2018 WL 3585217, at *19 (N.D. Ala. July 26, 2018) (quotation omitted).

Harris testified in her deposition that her employment with the Library was at-will, that she could be terminated at any time, and that she could be terminated with or without cause.  Harris also testified that she did not have an employment contract (or any contract of any kind) with Library, and that she was never told she would be employed for life or for a certain period of time.  It is, therefore, undisputed that she "[does] not have a basis to claim a property interest in her continued employment because she was an at-will employee, and, thus, was not entitled to procedural due process in connection with her termination."  *LaFleur*, 587 Fed. Appx. at 542.

Harris's lone rebuttal to this conclusion is based on an Amendment to the Library Articles of Incorporation that states: "The Corporation shall have the power to engage and compensate employees for the day-to-day operation of the Corporation's facilities and programs, and any such operation shall be deemed public employees, and entitled to all benefits and privileges generally afforded public

employees in the state of Alabama." [Harris Br., p. 13.] Harris offers no analysis for how this might establish a property interest in her employment except to say that "[a]s a public employee Harris had a property interest in her job." [*Id.*]

This is clearly wrong. Harris has cited no authority for the bold proposition that *every* public employee has a constitutionally protected property interest in their employment. On the contrary, due process rights extend only to public employees who have the requisite constitutionally protected property interest. *See Galbreath v. Hale County*, 754 F. App'x 820, 825 (11th Cir. 2018) ("A government employer cannot terminate an employee who *possesses a state-created property interest* in employment without due process . . . .") (emphasis added). The problem for Harris is thus not that she was something other than a public employee, but that she did not "possess[] a state-created property interest" in her employment such that she was entitled to due process. *Id.* *See also Cleveland*, 470 U.S. at 538 (holding public employee's due process claim "depends on their having had a property right in continued employment.").

In support of her argument, Harris points to the Alabama Supreme Court's recognition in *City of Orange Beach v. Duggan*, 788 So. 2d 146 (Ala. 2000), that "[t]he Supreme Court [in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542-543, (1985)] held that tenured government employees almost always must be afforded at least a limited pretermination hearing before they can be constitutionally terminated." [*Id.* at pp. 15–16 (quoting *City of Orange Beach*, 788 So. 2d at 542.] Harris's reliance on this authority is futile; while "tenured government employees" may have a right to due

process, there is no evidence to suggest that she was a "tenured" employee. The only evidence is to the contrary, as Harris (again) conceded in her deposition that she was terminable at-will. And "[i]f considered an at-will employee, under established law of this Circuit, there is no property interest in at-will employment." *Price v. U. of Alabama*, No. 03-15511, 2004 WL 1253201, at *2 (11th Cir. Apr. 20, 2004).[2] *See also Carmichael v. Chambers County Bd. of Ed.*, 581 F.2d 95, 97 (5th Cir. 1978) (affirming summary judgment in favor of defendant on Due Process claim, explaining "we find that since she was not tenured, she clearly had no constitutionally protected property interest in her job. She therefore is not necessarily entitled to procedural due process regarding her termination.") (internal quotations omitted). Accordingly, the district court did not err in holding that Stacey is entitled to summary judgment on Count I.

### (ii)    The undisputed facts establish that Harris was, in any event, provided pre-termination due process.

While Harris's due process claim necessarily fails because she had no property interest in her continued employment, the district court nonetheless correctly determined that Harris was, in fact, afforded pre-termination process that comported with the Fourteenth Amendment. "The 'essential requirements of due process' are notice and a pre-termination opportunity to respond." *Hakki v. Sec., Dept. of Veterans Affairs*, 7 F.4th 1012, 1031 (11th Cir. 2021) (internal citations omitted). "[D]ue

---

[2] *Accord LaFleur*, 587 Fed. Appx. at 541 ("Because an at-will employee does not have a property interest in continued employment, she is 'not entitled to procedural due process in connection with her termination.'") (quoting *Adams,* 888 F.2d at 1366).

process . . . requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 261 (2010)). "While some pre-termination hearing is necessary in the public employment context, it need not be elaborate." *Id.* (quotations and citations omitted). An employee is entitled to "'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story' before a state or state agency may terminate an employee." *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (en banc) (citing *Loudermill*, 470 U.S. at 546).

As the district court concluded, here "the undisputed material facts establish that [Harris] was given an opportunity to be heard." [Vol. I, Tab 105 at p. 16.] It is undisputed that Harris was provided notice to attend the Board meeting where her allegations concerning patrons of the Library being "known Ku Klux Klan affiliates" would be discussed with her and that Harris understood that her allegations would be discussed with her at this meeting. Harris was present at the start of the meeting but refused to sit down and left shortly after it began. Harris testified in her deposition that she could "sense something wasn't right," so she left the meeting to call her attorney who said, "Do not attend that meeting." Harris also testified that she believed the Board had already decided to fire her prior to the meeting.

In sum, based on Harris's own account, she understood that the topics of her

accusation of Library patrons being "known Ku Klux Klan affiliates" and her potential adverse employment action would be discussed with her during the Board meeting. While Harris ultimately did not attend the entirety of this meeting, she left voluntarily on the advice of her counsel and with the understanding that her allegations and potential termination would be discussed with her. Harris cannot have been deprived of an "opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), when she knowingly failed to apprise herself of the opportunity afforded to her.

Harris does not dispute that she was an afforded an opportunity to attend the meeting, but instead argues in her brief that there is a dispute as to whether the purpose of the meeting was for a pre-termination hearing. The sole basis for Harris's argument is that Ann Pridgen, one of the Board members, "did not know the meeting was to consider Harris's termination," so Harris contends that "genuine issues of material facts were raised whether Harris received a proper pre-termination hearing." [Harris Br., pp. 16–17.] Harris, however, ignores Pridgen's testimony that it was her intention that the Board would discuss with Harris during the meeting her allegations that "over 70 participants" in attendance at the Library's April 24, 2017 Confederate History Month program were "known Ku Klux Klan affiliates."[3] In other words, while Pridgen may not have known at the time the meeting began that Harris would

---

[3] It is also undisputed that Stacey similarly understood that the issue of Harris's allegation concerning "known Ku Klux Klan affiliates" would be discussed with her during this meeting.

be *terminated* during the meeting, it is undisputed that Pridgen was aware that Harris would be afforded the opportunity to respond to the issue central to the basis for her ultimate termination.    Accordingly, Pridgen's testimony actually supports the undisputed fact that Harris was provided "an opportunity to present his side of the story" as required by the Due Process Clause. *McKinney*, 20 F.3d at 1561.

In addition, Pridgen's personal understanding as to the purpose for the meeting does not constitute significantly probative evidence for Count I to survive summary judgment where it is undisputed that Harris *herself* understood the purpose of the meeting was to discuss her potential termination. As the district court explained, "Pridgen's testimony does not overcome Plaintiff's own understanding":

> Specifically, Plaintiff testified that she believed the Board had decided to fire her prior to the meeting. . . . Further, while present at the meeting, she stated that she could "sense something wasn't right," so she left the meeting to call her attorney who said "I'm not in town. Do not attend that meeting."    As a result, the undisputed facts establish that Plaintiff understood that nature of the meeting and chose to not participate in it.

[Vol. I, Tab 105 at p. 17.].

On this point, Harris argues the district court improperly relied on her own understanding of the purpose of the meeting, claiming that, "[t]raditionally, plaintiffs' testimony about their feelings in discrimination cases is not the deciding factor," and citing in support *Raybon v. Alabama Space Science Exhibit Commission*, 337 F. Supp. 3d 1153 (N.D. Ala., 2018) [Brief, p. 17.]  The language that Harries relies on from *Raybon* is inapposite.  There, the Court explained that "a plaintiff's subjective feelings and

personal reactions are not the complete measure of whether a contested employment action is sufficiently 'adverse' to be actionable under federal employment discrimination statutes." *Raybon*, 337 F. Supp. 3d at 1172. But whether Harris suffered an *adverse action* for purposes of standing under federal anti-discrimination statutes is clearly not at issue here, and the general rule stated in *Raybon* has no bearing on whether Harris was provided constitutionally-sufficient due process when she was indisputably aware of the nature of the meeting and knowingly refused to participate.

**B. The District Court Did Not Err in Concluding Stacey is Entitled to Summary Judgment on Harris's Equal Protection Discrimination Claim (Count II).**

**(i)    Harris forfeited her argument based on "direct evidence" of discrimination because it was not raised with the district court.**

The Eleventh Circuit has recognized three methods of proof on claims for racial discrimination: direct evidence of discrimination, the *McDonnell Douglas* framework, and a "convincing mosaic" of circumstantial evidence. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1327 (11th Cir. 2011). As Harris correctly notes, "[t]he District Court held [she] presented insufficient evidence under either the *McDonnell–Douglas* framework or a convincing mosaic standard to survive summary judgment." [Harris Br., p. 17.] On appeal, Harris makes no effort to argue the district court's conclusion that Harris failed to satisfy *McDonnell–Douglas* or to present a sufficient "mosaic" theory was incorrect. Instead, Harris asserts she "offered direct evidence of discrimination." This argument fails for the simple reason that Harris

never raised it below and is prohibited from doing so now for the first time on appeal.

"This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. S.W. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (internal quotations and citations omitted) (collecting cases). *Accord OPIS Mgmt. Res., LLC v. Sec'y, Fla. Agency for Health Care Admin.*, 713 F.3d 1291, 1298 (11th Cir. 2013) (holding "the specific argument advanced on appeal was not sufficiently raised before the district court and we will not address it"); *Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court.").

Harris forfeited any argument under a direct evidence theory of discrimination by failing to raise it before the district court in the first instance. *Id. See also Corley v. Mercedes-Benz U.S. Intl., Inc.*, 21-11986, 2022 WL 2345808, at *3 (11th Cir. June 29, 2022) ("Plaintiff raised no argument under the 'convincing mosaic' theory in the district court, so that argument is not properly before us.") (citing *Access Now*, 385 F.3d at 1331).  In responding to the motions for summary judgment before the district court, Harris explicitly relied only on a circumstantial "mosaic" theory of discrimination.  Harris argued then that the "*McDonnell-Douglas* framework is not the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case" and cited the "mosaic" standard prescribed in *Smith v. Lockheed Martin* under which "'[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, *presents a convincing mosaic of circumstantial evidence that would*

allow a jury to infer intentional discrimination by the decisionmaker.'" [Vol II, Tab 100 at p. 15 (quoting *Smith,* 644 F.3d at 1328) (emphasis added).]

The mosaic standard is, of course, entirely distinct from the direct-evidence standard that Harris now pursues. *See, e.g., Cooper v. Jefferson County Coroner and Med. Examr. Off.,* 861 Fed. Appx. 753, 756 (11th Cir. 2021) (discussing the direct-evidence standard and mosaic standard as alternative means of proof); *Tsavaris v. Savannah L. Sch., LLC,* 847 Fed. Appx. 634, 637 (11th Cir. 2021) (same). As noted, the mosaic standard is satisfied where a plaintiff "presents a convincing mosaic of *circumstantial evidence* that would allow a jury to *infer* intentional discrimination by the decisionmaker." *Smith*, 644 F.3d at 1328 (emphasis added). On the other hand, direct evidence is "evidence, which if believed, proves existence of fact in issue without inference or presumption." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n. 6 (11th Cir.1987)). Because the mosaic standard is based on "circumstantial evidence" and requires an inference by the trier of fact, *Smith*, 644 F.3d at 1328, it is by definition distinct from the direct-evidence standard. Indeed, in arguing before the district court in response to Stacey's motion for summary judgment that she "provide[d] evidence that would allow a reasonably jury to *infer* [] race discrimination," Harris was clearly not pursuing a theory of direct evidence. [Vol II, Tab 100 at p. 15 (emphasis added).] Because Harris cites no basis for reversal on her discrimination claim other than her forfeited theory of direct evidence, the district court's ruling should be affirmed.

**(ii)    There is no direct evidence of discrimination even if Harris had raised her theory before the district court.**

Again, "evidence that merely 'suggests discrimination' and 'leav[es] the trier of fact to infer' it is not direct evidence." *Tsavaris*, 847 Fed. Appx. at 638 (citation omitted). "As [this Court's] precedent illustrates, 'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of' some impermissible factor constitute direct evidence of discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (overruled on other grounds) (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342 n. 2 (11th Cir. 2002)). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Id.*

Harris contends that the following constitute direct evidence of discrimination:

(i)    That "Harris's belief of KKK affiliates stemmed from being called the N word, the rudeness of people, and presence of Confederate flags gave Harris the perspective that the organization was affiliated with the Klan."

(ii)    That "Stacey explained [in his deposition] that the Sons of Confederate Veterans organization is restricted to descendants who served in the confederate war."

(iii)    That "[t]here is a recognized crossover between SCV members and hate groups such as the KKK."

(iv)    That "[t]here is also a documented but often undiscussed history of racial tension in Monroeville, Alabama which Stacey disputes the attempts to memorialize."

(v)    That "[t]he Board's letter reflects that they were upset by the EEOC charge and the allegation that there were known affiliates

of the KKK in attendance at the Sons of the Confederate Veterans' Commanders lectures."

(vi)    That "[t]he second lecture by SCV Commander Pierce commemorated the strategies of Bedford Forrest who later became the first KKK's First Grand Wizard."

(vii)    That "Harris observed a conflict between Greg Marshall, an African American patron who complained about the program."

(viii)    And that "[t]he library had never held a Confederate History month program."

[Harris Br., pp. 19–21.]

Numbers (iii), (iv), (vi), and (viii) above are not based on admissible evidence and should be excluded from consideration. In any event, it is beyond doubt that none of these items cited by Harris amount to direct evidence of discrimination. To reach the conclusion that Harris was terminated because of her race based all or any of these items necessarily requires a juror to *infer* through these alleged "facts" that the Board and the Board Members were motivated by race, which casts these facts in the realm of circumstantial evidence. Indeed, Harris explicitly presented these same facts in her response in opposition to Stacey's motion for summary judgment and argued then that it amounted to "evidence that that would allow a reasonable jury to *infer* [] race discrimination." [Vol II, Tab 100 at p. 15 (emphasis added).]

Harris does not even attempt to explain how no inference is required through these facts. Instead, Harris argues direct evidence exists *even* where it requires one to infer discrimination, claiming that in *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir.

1999), the Eleventh Circuit "examined several cases where it had held that certain statements constituted direct evidence of discrimination" and "[i]n each of the cases cited approvingly by the Eleventh Circuit, comments that constituted direct evidence required the hearer to make at least one inference to connect the dots between the comment and the protected personal characteristic." [Harris Br., p. 18.]

Harris's reliance on *Wright* is misplaced. In *Kilpatrick v. Tyson Foods, Inc.*, 268 Fed. Appx. 860 (11th Cir. 2008), the Court rejected Harris's argument while addressing "Judge Tjoflat's opinion in *Wright*[, 187 F.3d], which said that 'direct evidence, in the context of employment discrimination law, means evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic.'" 268 Fed. Appx. at 863 (quoting *Wright*, 187 F.3d at 1293). The Court explained that "neither of the other two members of the panel joined in Judge Tjoflat's opinion, agreeing only that the evidence there was sufficient to create a genuine issue of material fact," and "[m]oreover, our case law, both before and since *Wright*, has used the standard applied by the district court in this case—i.e., that direct evidence in this context means 'evidence, which if believed, proves existence of fact in issue *without inference or presumption*.'" *Id.* (emphasis added) (quoting *Wilson*, 376 F.3d at 1086, and citing in accord *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1081 (11th Cir. 2005); *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 730 (11th Cir. 1999); *Merritt*, 120 F.3d at 1189).

As recently as last year the Eleventh Circuit recognized again that "the *Wright*

definition is not precedential. The two other judges on the panel concurred in judgment only; they did not join the lead opinion's articulation of the direct-evidence standard."[4] *Robertson v. Riverstone Communities, LLC*, 849 Fed. Appx. 795, 801 n.4 (11th Cir. 2021). And just one day before the filing of this Brief, the Eleventh Circuit issued an opinion relying on the traditional definition of direct evidence that precludes any sort of inferential leap of the sort sought by Harris. *Kelly v. Howden*, 21-13573, 2022 WL 17259720, at *4 (11th Cir. Nov. 29, 2022) ("Direct evidence is evidence that, if believed, proves the existence of discriminatory intent without inference or presumption.") (internal quotations and citation omitted).

## C. The District Court Did Not Err in Concluding that Stacey is Entitled to Summary Judgment on Harris's Retaliation Claim (Count III).

### (i) There is no cognizable claim for retaliation under the Equal Protection Clause.

In Count III, Harris alleges that she was terminated for "opposing discrimination" and claims the "Board's conduct was retaliatory in violation of the

---

[4] District Courts in the Eleventh Circuit have similarly rejected the language relied upon by Harris from *Wright* as obiter dictum. *Carper v. TWC Services, Inc.*, 820 F. Supp. 2d 1339, 1348 n.14 (S.D. Fla. 2011) ("Plaintiff's reliance on *Wright* . . . is misplaced, in that Eleventh Circuit cases post-dating *Wright* have roundly rejected *Wright's* more relaxed standard in favor of the traditional standard . . . .") (citing *Kilpatrick*, 268 Fed. Appx. at 862); *Ferrell v. Masland Carpets, Inc.*, 97 F. Supp. 2d 1114, 1123 (S.D. Ala. 2000) ("declin[ing] to adopt the definition of direct evidence propounded by Judge Tjoflat in *Wright* and urged by [plaintiff] in this case" as "mere obiter dictum" and because "the Eleventh Circuit has not since applied Judge Tjoflat's definition of direct evidence."); *Copley v. Bax Glob., Inc.*, 80 F. Supp. 2d 1342, 1348 (S.D. Fla. 2000) ("Plaintiff's reliance on Judge Tjoflat's remonstrance concerning the standard to be applied is misplaced. . . . [T]he well-established law in this circuit still requires that the Court apply the traditional concept of direct evidence.").

Equal Protection Clause." [Vol. I, Tab 51 at ¶¶ 53–54.] The Eleventh Circuit, however, has long recognized that a "pure or generic retaliation claim . . . simply does not implicate the Equal Protection Clause." *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) (citing *Ratliff v. DeKalb County,* 62 F.3d 338, 340 (11th Cir. 1995) (holding "no clearly established right exists under the equal protection clause to be free from retaliation.")). Because a retaliation claim "simply does not implicate the Equal Protection Clause," the district court correctly concluded that Stacey was entitled to summary judgment on Count III. *Id.*

Harris asks the Court to overturn this Circuit's decades-old precedent on this point based on the U.S. Supreme Court's 2005 decision in *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005). *Jackson* involved an employee's claim that the Birmingham Board of Education violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., by retaliating against him "because he had complained about sex discrimination in the high school's athletic program." 544 U.S. at 171. The district court dismissed the plaintiff's retaliation claim and the Eleventh Circuit affirmed, reasoning that "[n]othing in the text [of Title IX] indicates any congressional concern with retaliation that might be visited on those who complain of Title IX violations." *Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1344 (11th Cir. 2002), rev'd 544 U.S. 167 (2005). The U.S. Supreme Court granted certiorari "to resolve a conflict in the Circuits over whether Title IX's private right of action encompasses claims of retaliation for complaints about sex discrimination," and concluded that

Title IX does provide such a right of action. 544 U.S. at 172.

In so holding, the Court began with the text of Title IX, which provides that "[n]o person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." *Id.* (quoting 20 U.S.C. § 1681(a)). The Court noted that Title IX "broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex,'" and then explained that "[r]etaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." *Id.* Accordingly, the Court concluded "that when a funding recipient retaliates against a person because he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX." *Id.* The Court also explained, however, that this outcome was informed by the "import of our repeated holdings construing 'discrimination' under Title IX broadly," because "'[d]iscrimination' is a term that covers a wide range of intentional unequal treatment," and "by using such a broad term, Congress gave the statute a broad reach." *Id.* The Court further emphasized that "Title IX was enacted in 1972, three years after our decision in *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969)," in which the U.S. Supreme Court held that a retaliation claim is cognizable under 42 U.S.C. § 1982, and which the Court found "provides a valuable context for understanding the statute" because it "is not only appropriate but also realistic to presume that Congress

was thoroughly familiar with *Sullivan* and that it expected its enactment of Title IX to be interpreted in conformity with it." *Id.* (cleaned up).

The U.S. Supreme Court's opinion in *Jackson* does not support the expansion of the Equal Protection Clause to encompass retaliation claims for a number of reasons. First, *Jackson* was limited to a question of statutory interpretation under Title IX—not the Equal Protection Clause. Harris offers no analysis for why she contends the Court's rationale under *Jackson* vis-à-vis Title IX should extend with equal force to the Equal Protection Clause. Harris merely defers to the Second Circuit's opinion in *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72 (2d Cir. 2015), which concluded that the "reasoning [in *Jackson*] applies with equal force to the employment context" such that "[w]hen a supervisor retaliates against an employee because he complained of discrimination, the retaliation constitutes intentional discrimination against him for purposes of the Equal Protection Clause." 81 F.3d at 82.

The Second Circuit, however, similarly offered no analysis for why *Jackson*'s rationale under Title IX should extend to the Equal Protection Clause. The Fourth Circuit, on the other hand, has, and from this thorough exercise did "not find *Vega* persuasive." *Wilcox v. Lyons*, 970 F.3d 452, 463 (4th Cir. 2020), cert. denied, 210 L. Ed. 2d 904 (June 14, 2021). The Fourth Circuit in *Wilcox* began with a recognition that "[a]t least six of our sister circuits have held that the Equal Protection Clause cannot sustain a pure claim of retaliation," and noted that "[o]nly the Second Circuit has reached a contrary conclusion, in *Vega*[, 801 F.3d]. *Id.* Turning to an analysis of

*Vega*'s reliance on *Jackson*, the Court found it "do[es] not read the Court's decision in *Jackson* to suggest that every statute prohibiting discrimination—much less the Constitution's aged guarantee of equal protection—also necessarily incorporates a right to be free from retaliation for reporting discrimination." *Id.*

The Court first explained that "[i]f a prohibition on discrimination always encompassed retaliation, Title VII's antiretaliation provision would be mere surplusage," which not only "flies in the face of commonly applied canons of statutory construction" but, "more importantly, [] illustrates that—at least in the mind of Congress—retaliation is not always included within the conceptual ambit of discrimination." *Id.* Accordingly, the "better understanding is that *Jackson* and cases like it turned on the text and history of the statutes being interpreted—neither of which they share with the Equal Protection Clause." *Id.*

Turning to the text and history of Title IX as compared to the Equal Protection Clause, the Court acknowledged that, "[i]n fact, the Supreme Court has specifically held that Title IX's antidiscrimination imperative is not coterminous with the Equal Protection Clause." *Id.* Specifically, "[i]n *Fitzgerald v. Barnstable School Committee*, [555 U.S. 246 (2009)], the Court engaged in a 'comparison of the substantive rights and protections guaranteed' by Tile IX and the Equal Protection Clause and determined that 'Title IX's protections are narrower in some respects and broader in others.' As the Court explained, Title IX applies in circumstances in which the Equal Protection Clause does not, as well as vice versa, and '[e]ven where particular activities and

particular defendants are subject to both Title IX and the Equal Protection Clause' the pertinent standards provided by each 'may not be wholly congruent.'" *Id.* (quoting *Fitgerald*, 555 U.S. at 256–57).

The Fourth Circuit, therefore, disagreed "with the *Vega* court's conclusion that because the term 'discrimination' in Title IX encompasses retaliation, the Equal Protection Clause's prohibition on unjustified classifications based on sex must also encompass pure claims of retaliation based not on sex but on an employee's speech. The guarantee of equal treatment for similarly situated persons is conceptually distinct from a right to be free from retaliation for voicing complaints of discrimination. While the latter may serve to guard and secure the former primary objective, the enforcement mechanism is distinct from the right itself. It does not follow that because discrimination sometimes includes retaliation in other contexts, the Equal Protection Clause must have the same remedial scope." *Id.* (internal citation omitted).

Like the Fourth Circuit in *Wilcox*, and for the reasons expressed therein, Stacey respectfully submits that the Eleventh Circuit should not follow *Vega* and should "decline to break new constitutional ground based on the interpretation of statutes with different histories, different structures, and different text than the Fourteenth Amendment." *Id.*

Additionally, the expansion of the Equal Protection Clause sought by Harris would be in contravention of settled precedent governing the scope of the Equal Protection "class-of-one" claims. The Equal Protection Clause, of course, "creates no

substantive rights," but instead "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997) (internal citation omitted).    Accordingly, the recognition of a claim for retaliation under the Equal Protection Clause could derive from any notion that the Clause recognizes some substantive right against retaliation, but would be based on whether the individual complaining of retaliation was subject to constitutionally impermissible disparate treatment.    Moreover, a retaliation claim under the Equal Protection clause could not be pursued on any basis other than a "class-of-one" theory because the alleged disparate treatment is based on (as here) the plaintiff's engagement in a particular activity (lodging a complaint) as opposed to the plaintiff's membership in a particular class. *Thorne v. Chairperson Fla. Parole Commn.*, 427 Fed. Appx. 765, 771 (11th Cir. 2011) ("The Supreme Court has recognized 'class of one' equal protection claims where a plaintiff asserts that she was irrationally discriminated against on an individual basis, rather than as a member of a particular group") (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

The U.S. Supreme Court, however, has held that "the class-of-one theory of equal protection has no application in the public employment context." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 607 (2008) (explaining that "the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context.    To treat

employees differently is not to classify them in a way that raises equal protection concerns."). *See also Brackin v. Anson,* 585 Fed. Appx. 991, 996 (11th Cir. 2014) (affirming summary judgment of equal protection claim because "*Engquist* forecloses Plaintiffs' class-of-one equal-protection claims because it holds that the theory 'has no application in the public employment context,' whether or not the plaintiffs making the claims were at-will employees.") (quoting *Engquist*, 553 U.S. at 607); *Alford v. Consol. Govt. of Columbus, Ga.*, 438 Fed. Appx. 837, 840 (11th Cir. 2011) (same).

Because Harris's retaliation claim must be brought as a class-of-one claim, and because this theory "has no application in the public employment context," *Engquist*, 553 U.S. at 607, Harris's claim is barred as matter of law. The Court should reject Harris's retaliation theory on this basis as well.

**(ii)    Even if a claim for retaliation existed under the Equal Protection Clause, it would be subject only to rational basis scrutiny.**

Harris's retaliation claim necessarily fails as a matter of law because no such cause of action exists (and cannot exist) under the Equal Protection Clause. But in the event the Eleventh Circuit were to break new constitutional ground and allow for such a claim, Stacey submits that the claim would be subject to a standard of rational basis scrutiny that is easily satisfied from the undisputed record evidence. It is well settled that "[a] government action challenged under a class-of-one theory is reviewed to determine whether there is a rational basis for any differential treatment of similarly situated persons." *Barati v. Fla. Atty. Gen.*, 18-13998, 2021 WL 2911729, at *5 (11th

Cir. July 12, 2021) (citing *Engquist*, 553 U.S. at 602), cert. denied sub nom. *Barati v. Moody*, 211 L. Ed. 2d 572 (Jan. 18, 2022). Rational basis scrutiny is a highly deferential standard, *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001), and "[a]ll that is necessary is that there be some conceivable reason supporting the government action." *Barati*, 18-13998, 2021 WL 2911729, at *5 (citing *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009)).

Stacey does not concede that Harris was terminated *because* she complained of discrimination and, instead, submits that the undisputed evidence is that she was terminated because of a salaciously false accusation against Library patrons that happened to be within a complaint of discrimination. In any event, it is beyond dispute that there is "some conceivable reason supporting" the Board's decision to terminate Harris sufficient to satisfy rational basis review. It is undisputed that Harris was terminated for baselessly accusing 70 patrons of the Library of being "known Ku Klux Klan affiliates"—a white supremacist terrorist hate group. Harris actually agrees that she was terminated for this reason, and she further acknowledges that she did not know when she made this accusation whether any of the 70 patrons were actually affiliates of the Ku Klux Klan. It was Stacey's belief that Harris had demonstrated a complete disregard for the patrons and interests of the Library (which was in a precarious financial condition and depends on the financial support of its patrons) by making this accusation, and Stacey further believed that her conduct was detrimental to the Library's status and goodwill within the community. A termination because of

an employee's false accusation that 70 patrons were "known Ku Klux Klan affiliates," which jeopardized the Library's standing in the community and exposed it to potential legal action, is certainly supported by a rational basis. While Harris might dispute the Board's decision to terminate her on account of her accusation, "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

The district court's order granting summary judgment in Stacey's favor on Count III is thus due to be affirmed even if the Court accepts Harris's invitation to create retaliation claim under the Equal Protection Clause. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1117 (11th Cir. 1993) ("When reviewing a grant of summary judgment, the court of appeals may affirm if there exists any adequate ground for doing so, regardless of whether it is the one on which the district court relied.").

## VI.    CONCLUSION

The Court should affirm the judgment below.

Respectfully submitted,

/s/ T. Hart Benton, III
T. HART BENTON, III, ESQ.
McDOWELL KNIGHT ROEDDER & SLEDGE, LLC
11 North Water St., Ste. 13290
Mobile, Alabama 36602
251-432-5300
251-432-5303 (fax)
*Counsel for Defendant-Appellee Steve Stacey*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rules of Appellate Procedure 27(e)(2)(B)(i) and 32(g)(1), I hereby certify that the foregoing Brief of Defendant-Appellee Steve Stacey complies with the applicable type-volume limitations. Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this Brief contains 8,801 words. This certificate was prepared in reliance on the word count of the word processing system Microsoft Word used to prepare this brief.



*/s/ T. Hart Benton, III*

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2022, I electronically filed the foregoing brief using the Court's CM/ECF system for filing, which will send notification of such filing to the following:

Lee D. Winston
WINSTON COOKS, LLC
2 N. 20th Street, Suite 1330
Birmingham, AL 35203
(205) 502-0970 – T
(205) 251-0231 – F
lwinston@winstoncooks.com
*Attorney for Plaintiff/Appellant Mary A. Harris*

Jamie H. Kidd Frawley
WEBB MCNEILL WALKER P.C.
One Commerce Street, Suite 700
Montgomery, AL 36104
(334) 262-1850 T (334) 262-1772 – F
jfrawley@wmwfirm.com
*Attorney for Defendant/Appellee Monroe County Commission*

Peter S. Mackey
BURNS, CUNNINGHAM, & MACKEY, P.C.
P.O. Box 1583
Mobile, Alabama 36633
(251) 432-0612 - T
(251) 432-0625 – F
psmackey@bcmlawyers.com
*Attorney for Defendants/Appellees Monroe County Public Library Board of Trustees, Ann Pridgen, Shannon Powell, and Jerome Sanders*

/s/ T. Hart Benton, III