No. 22-11236

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

**MARY HARRIS,**

*Plaintiff-Appellee,*

v.

**MONROE COUNTY LIBRARY BOARD OF TRUSTEES, et al.,**

*Defendants-Appellants*

---

On Appeal from the United States District Court
for the Southern District of Alabama, Southern Division

*Case No.* 1:19-cv-00265-CG-N

---

## BRIEF OF APPELLEE MONROE COUNTY COMMISSION

---

Jamie Helen Kidd Frawley
WEBB MCNEILL WALKER PC
One Commerce Street, Suite 700
Montgomery, AL 36104
(334) 262-1850 – T
(334) 262-1772
jfrawley@wmwfirm.com

*Attorney for Appellee Monroe County Commission*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record for Appellee Monroe County Commission, hereby respectfully submit this Certificate of Interested Persons and Corporate Disclosure Statement in accordance with 11th Cir. R. 26.1-2, and list the following entities/persons as parties in the above-styled proceeding:

1.    Granade, Callie V.S. – United States District Court Judge, Southern District of Alabama

2.    Nelson, Katherine – Magistrate Judge, Southern District of Alabama

3.    Harris, Mary – Plaintiff/Appellant

4.    Monroe County Commission – Defendant/Appellee

5.    Monroe County Public Library Board of Trustees – Defendant/Appellee

6.    Powell, Shannon – Defendant/Appellee

7.    Pridgen, Ann – Defendant/Appellee

8.    Sanders, Jerome – Defendant/Appellee

9.    Stacy, Steve – Defendant/Appellee

10.    Winston, Lee D, – Counsel for Plaintiff/Appellant

11.    Benton, T. Hart, III, Counsel for Defendant/Appellee Steve Stacey

i

12.     Frawley, Jamie Helen Kidd – Counsel for Defendant/Appellee Monroe County Commission

13.     Mackey, Peter S., Counsel for Defendants/Appellees Monroe County Public Library Board of Trustees, Ann Pridgen, Shannon Powell, and Jerome Sanders

14.     Myles, Russell, Counsel for Defendant/Appellee Steve Stacey

## CORPORATE DISCLOSURE STATEMENT

COMES NOW, the Monroe County Commission, and in accordance with the Order of this Court and Federal Rules of Appellate Procedure, make the following disclosure concerning parent companies, subsidiaries, partners, limited liability entity members and managers, trustees (but no trust beneficiaries), affiliates, or similar reportable entities:

Appellees have no reportable entities.

iii

## STATEMENT REGARDING ORAL ARGUMENT

Although Mary Harris has requested oral argument, she has not proffered any legitimate reason why her request should be granted, and no such reason exists. Oral argument is not necessary in this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ..................................................................... I

CORPORATE DISCLOSURE STATEMENT ........................................................ III

STATEMENT REGARDING ORAL ARGUMENT ............................................ IV

TABLE OF CONTENTS ...................................................................................... V

TABLE OF CITATIONS ...................................................................................... vii

STATEMENT REGARDING ADOPTION OF BRIEFS ......................................... x

STATEMENT OF THE ISSUES ........................................................................... 1

STATEMENT OF THE CASE .............................................................................. 2

    I.     Course of the Proceedings and Dispositions Below ..................................... 2

    ii.    Facts Relevant to the Issues Presented for Review ....................................... 3

    III.   Standard of Review ..................................................................................... 6

SUMMARY OF THE ARGUMENT ..................................................................... 9

ARGUMENT ...................................................................................................... 10

I.    THIS COURT DOES NOT NEED TO REACH THE ISSUE OF THE COMMISSION'S LIABILITY BECAUSE THE SUMMARY JUDGMENT IS DUE TO BE AFFIRMED......................................................................................10

II.   PLAINTIFF-APPELLANT MARY HARRIS DID NOT PLAUSIBLY ALLEGE ANY CLAIM AGAINST THE MONROE COUNTY COMMISSION. 14

   A.   Plaintiff failed to state a claim under 42 U.S.C. § 1983 against the Monroe County Commission..........................................................................................17

   B.   The Monroe County Commission cannot be held liable to plaintiff under Title VII of the Civil Rights Act of 1965.........................................................20

CONCLUSION ...................................................................................................25

CERTIFICATE OF COMPLIANCE WITH TYPE – VOLUME LIMITATION ..28

CERTIFICATE OF SERVICE ..............................................................................28

# TABLE OF CITATIONS

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).......................................................7

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) .......................................6, 8

*Burlington Industries v. Ellerth*, 524 U.S. 742 (1998) ............................15

*Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991) ................................ 15, 20

*Chames v. Calhoun County Commission*, No. 21-11651, 2022 WL 1217652 (11th Cir. April 26, 2022).............................................................24

*Cobb v. Montgomery Library Bd.*, 207 F.Supp. 880 (M.D. Ala. 1962) ........... 19, 20

*Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955 (11th Cir. 2008)............................6

*Dillard v. Baldwin County Com'n*, 833 So.2d 11 (2002) ........................................16

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ..................................8

*Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008) ................................. 12, 13

*Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009) ........................12

*Gaines v. Smith,* __So.3d__, No. 1210304, 2022 WL 17073033 (Ala. Nov. 18, 2022) ...................................................................................................16

*Gogel v. Kia Motors Manufacturing of Georgia, Inc.*, 967 F.3d 1121 (11th Cir. 2020) ...................................................................................................13

*Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520 (11th Cir. 1987) ..................................11

vii

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) ....................................11

*Knight through Kerr v. Miami-Dade County*, 856 F.3d 795 (11th Cir. 2017) .........18

*Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012) ..............11

*Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332 (11th Cir. 1999) (*en banc*)21, 22, 24, 25

*Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) ................................................................................................................ 15, 17

*Oaks v. City of Fairhope, Alabama*, 515 F.Supp. 1004 (S.D. Ala. 1981)..............21

*PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274 (11th Cir. 2021) ....12

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ...................................... 18, 19

*Peppers v. Cobb County, Georgia*, 835 F.3d 1289 (11th Cir. 2016).......................22

*Porter v. Ray*, 461 F.3d 1315 (11th Cir. 2006)..........................................................7

*Vega v. Hamstead Union Free School Dist*, 801 F.3d 72 (2nd Cir. 2015)..............11

*Watkins v. Bowden*, 105 F.3d 1344 (11th Cir. 1997).................................................11

*Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949 (11th Cir. 2009).................... 14, 22

*Wilcox v. Lyons*, 970 F.3d 452 (4th Cir. 2020).........................................................12

**Statutes**

42 U.S.C. § 1983 ................................................................................................. 14, 15

42 U.S.C. § 2000e-2............................................................................................. 15, 20

Ala. Code § 11-3A-2 (1975) ......................................................................20

Ala. Code § 11-90-1 (1975) ...................................................... 17, 19, 23

Ala. Code § 11-90-2 (1975) .......................................................... 17, 19

Ala. Code § 11-90-3 (1975) .......................................................... 17, 19

Ala. Code. § 11-45-1 (1975) .....................................................................20

Title VII of the Civil Rights Act of 1964 ................................................14

**Rules**

Fed. R. Civ. P. 8 ............................................................................................6

**Other Authorities**

Ala. Op. Atty.Gen. No. 94-00178, 1994 WL 16969221 (Ala. A.G. 1994) .............23

## STATEMENT REGARDING ADOPTION OF BRIEFS

In the interests of judicial economy, Defendant-Appellee the Monroe County Commission hereby adopts co-Appellee Steve Stacey's Brief in its entirety, and also adopts the Argument section of co-Appellees Pridgen, Powell, Sanders, and the Library Board (hereinafter collectively referred to as the Library Board).

## STATEMENT OF THE ISSUES

1.     Did the District Court err in granting summary judgment against Mary Harris when she failed to put forth substantial evidence to support her claims?

2.     Did Mary Harris plausibly state any claim pursuant to 42 U.S.C. § 1983 against the Monroe County Commission when she did not make any factual or legal allegations against it in her Complaint, and Alabama law establishes that Harris's employment was directed at all times by the Monroe County Library Board?

3.     Did Mary Harris plausibly allege any grounds for disregarding the boundaries between the Monroe County Commission and the Monroe County Library Board set by Alabama law when she failed to make any factual or legal allegations regarding their relationship?

## STATEMENT OF THE CASE

The Monroe County Commission hereby adopts and incorporates by reference the Statement of the Case included in the Brief of Steve Stacey in full, and adds the following regarding the claims alleged against it:

## I.    COURSE OF THE PROCEEDINGS AND DISPOSITIONS BELOW

Plaintiff Mary Harris filed her initial Complaint in this action on June 5, 2019, against the Monroe County Public Library Board of Trustees, the Monroe County Commission, and Library Board members Ann Pridgen, Shannon Powell, Jerome Sanders, and Steve Stacey, in their individual and official capacities. (Doc. 1.) The Monroe County Commission moved to dismiss the Complaint. (Docs. 15-16-2.) Harris then filed an Amended Complaint (Docs. 29, 29-1), which was stricken because she had failed to either seek leave of court or consent of the parties. (Doc. 31.) Harris subsequently sought leave to file a response to the Commission's Motion to Dismiss. (Doc. 34.)

A briefing schedule was eventually entered (Doc. 36), and the motion to dismiss was fully briefed. (Docs. 39, 39-1, 40.) A Report and Recommendation recommending, *inter alia*, the dismissal of all claims against the Monroe County Commission was issued on May 22, 2020. (Doc. 45.) Harris objected to the Report and Recommendation, and the Commission responded to this objection. (Docs. 46, 47.) On June 17, 2020, the district court adopted the Report and Recommendation,

2

dismissing all claims against the Monroe County Commission with prejudice. (Doc. 48.)

The case then proceeded on the remaining claims against the remaining defendants. Summary judgment was eventually granted as to all remaining claims. (Docs. 105, 106.)

## II.    FACTS RELEVANT TO THE ISSUES PRESENTED FOR REVIEW

### A.    Allegations in the Complaint against the Commission

1.    The sole factual allegation regarding the Monroe County Commission is found in the "Parties" section of the Complaint, as follows: "Defendant Monroe County Commission is a governmental entity under the laws of the State of Alabama." (Doc. 1, PageID.3, ¶ 10.)

2.    The Monroe County Library Board of Trustees is described in the Complaint as a "governmental created entity under the laws of the State of Alabama which oversees the library operation."

3.    The Complaint contains no factual allegations whatsoever linking the Monroe County Commission or any of the Commissioners to Harris's termination. It is instead made clear in multiple places that the Library Board, and only the Library Board, was solely responsible for her termination, including as follows: "Harris lost her job when the Monroeville Library Board of Trustees fired her shortly

after receiving her EEOC charge challenging race and age discrimination in her employment." (Doc. 1, PageID.4, ¶ 17.) Harris alleged that the "Library Board terminated Harris' employment without further inquiry" and that the letter was "signed by each board member…" (Id., ¶¶ 19-20.) "According to the Library Board's termination letter unnamed attendees of the meeting were upset and planned to sue over the contents of Harris' EEOC charge." (Id., PageID.5, ¶ 22.)

4.    Although Harris is not pursuing her failure to promote claim, it is worth noting that the factual allegations regarding this claim again only target the Library Board, without any mention whatsoever of involvement by the Monroe County Commission. (Doc. 1, PageID.5-6.)

5.    With the exception of the claim brought only against Stacey, Harris's legal allegations and requests for relief then consistently refer to "Defendants," collectively, without any differentiation amongst the various Defendants. (Doc. 1, PageID.7-12.)

6.    The Complaint alleged that Harris "filed a charge of discrimination with the Equal Employment Opportunity Commission [hereinafter "EEOC"] field office in Birmingham, Alabama. On March 7, 2019, a right to sue letters were issued and the case is being filed within 90 [days] of the receipt of such letters." (Doc. 1, PageID.2.)

4

7.    The EEOC Charge was filed only against the "Monroe County Public Library." (Doc. 39-1.)  The EEOC denied Freedom of Information Act request made by the undersigned on behalf of the Monroe County Commission on the following grounds: "Because you have not requested a file to which you (or your client) are a party, we can neither confirm nor deny that the charge you requested exists."  (Doc. 16-2.)

**B.    Additional facts regarding the formation of the Monroe County Library Board**

8.    It is a matter of public record that the Monroe County Library Board was first incorporated as a private non-profit corporation in 1981.  (Doc. ?)

9.    In 2002, the Articles of Incorporation were amended so that the Monroe County Library Board became a public non-profit corporation falling under Ala. Code §§11-90-1 et seq, which corporation is still in existence.   In 2018, a new non-profit corporation called the "Monroe County Public Library" was also formed. (Doc. ?)

10.    Ala. Code § 11-90-1 (1975) authorizes both county commissions and municipalities to either "establish and maintain or aid in establishing and maintaining free public libraries."   "The government and supervision of such libraries shall be vested in a library board consisting of five members who shall be appointed by the county commission or governing body of the municipality."  Ala.

5

Code § 11-90-2.   These library boards are then given "full power and authority to…(1) control the expenditure of all funds received or appropriated for such libraries…(5) elect a librarian and other employees; and (6) manage and control the said library in order to carry out the full intent and purpose of this chapter."  Ala. Code § 11-90-3 (1975).

## III.   STANDARD OF REVIEW

Harris is correct that this Court's review of the dismissal of all claims against the Monroe County Commission *de novo*.  (Harris Br., pg. 14.)  Her omission of the applicable standard for dismissal for failure to state a claim is telling.  Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff provide the defendant with a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  "Shotgun" pleadings have always been disfavored because they waste judicial resources and fail to give defendants fair notice of "what the claim is and the grounds upon which it rests."  *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir. 2008).  In *Bell Atlantic v. Twombly*, the United States Supreme Court tightened the pleading standard applicable to complaints, describing the old "no set of facts" as being "best forgotten as an incomplete, negative gloss" on Rule 8.  550 U.S. 544, 563 (2007).  Instead, the *Twombly* Court set a "plausibility" standard, pursuant to which the plaintiff must plead enough facts (not merely

6

unsupported legal conclusions) to show that, if the facts are proven true, he will plausibly be entitled to the relief that he seeks. *Id.* at 562-63.

In *Ashcroft v. Iqbal*, the Court further described the plausibility standard as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

556 U.S. 662, 678 (2009) (internal citations omitted). The *Iqbal* Court also emphasized that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

This rule furthers the principle that discovery may not be used as a "fishing expedition" to flesh out insufficiently alleged claims. *See, e.g., Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006) (affirming denial of motion seeking review of parole files in attempt to prove due process violations when discovery sought would

be irrelevant to the claims actually stated).  The *Twombly* Court stressed the importance of applying the Rule 8 standard rigorously "lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value."  550 U.S. at 557 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

As discussed herein, Harris's inclusion of the Monroe County Commission as a Defendant in this case is the epitome of an unauthorized, wholly improper fishing expedition, which is bordering on the sanctionable frivolity at this point.

## SUMMARY OF THE ARGUMENT

Plaintiff-Appellant Mary Harris is explicit that any claims she may have against the Commission are wholly dependent on the viability of the claims against the other Defendants/Appellees. Yet, despite the Complaint's utter lack of factual allegations regarding the alleged relationship between the Monroe County Commission and the Library Board, and notwithstanding the absence of legal support for her arguments, she has pleaded with this Court to allow her to drag the Commission back into this case in order to conduct discovery against the Commission on the nature of its relationship with the Library. It is notable that Harris *still* cannot give any specifics as to what she might expect this discovery to reveal, stating only that she should have the opportunity to develop evidence of unknown "factors" that might be enough to justify holding the Commission liable. To be blunt, Harris's continued attempts to involve the Monroe County Commission in her dispute with the Monroe County Public Library Board is a wholly frivolous fishing expedition. The district court's judgment is therefore due to be affirmed.

.

**ARGUMENT**

## I.  THIS COURT DOES NOT NEED TO REACH THE ISSUE OF THE COMMISSION'S LIABILITY BECAUSE THE SUMMARY JUDGMENT IS DUE TO BE AFFIRMED.

Lest there be any doubt as to the purely derivative nature of Harris's claims against the Monroe County Commission, she has stated that this Court need not reach the propriety of the Commission's dismissal unless it reverses the grant of summary judgment on her substantive claims.  As summary judgment was properly granted, out of an abundance of caution, the Commission hereby adopts and incorporates by reference the arguments made by the Library Board and Steve Stacey as if fully stated herein.  If, however, this Court were to find in Harris's favor both as to the summary judgment and as to the dismissal of the Commission, the remedy would not just be that the case be remanded for trial, as Harris suggests in her Conclusion (Harris Br., pg. 27).  Due process considerations mandate that the Commission would be entitled to discovery (which Harris also appears to seek) and an opportunity to file for summary judgment.

The Commission also writes separately to emphasize its agreement with co-Appellees regarding the inappropriateness of expanding the Equal Protection Clause to cover claims alleging retaliation for complaining about discrimination.  As previously recognized by this Court, while the elements that make up a retaliation claim may be protected by the First and Fourteenth Amendments, "[a] pure or

10

generic retaliation claim, however, simply does not implicate the Equal Protection Clause." *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11ᵗʰ Cir. 1997).

It is a fundamental principle of statutory interpretation that the legislature did not intend to pass vain or meaningless legislation. *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1524 (11ᵗʰ Cir. 1987). Title VII, the Fourteenth Amendment (and, for that matter, Title VI, Title IX, 42 U.S.C. § 1981, and other anti-discrimination statutes) all exist for a specific reason. Courts have consistently recognized substantive and remedial differences amongst their various provisions. *See, e.g.*, *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 346 (11ᵗʰ Cir. 2012) (recognizing that Title VI does not provide a private right of action for a disparate impact claim).

Harris has urged this Court to adopt the Second Circuit's reasoning as outlined in *Vega v. Hamstead Union Free School Dist.*, based on its former opinions (which of course are irrelevant here); the notion that there is "no sound reason" to deviate from the parallel analysis of Equal Protection and Title VII claims; and, finally, the principle that "retaliation is a form of discrimination," as expressed in *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005). 801 F.3d 72, 82 (4ᵗʰ Cir. 2015). With respect to the Second Circuit, the Commission submits that this rationale fails to appreciate the *Jackson* Court's declaration that its decision was explicitly "based

11

on the statute's text," not on a general commonly accepted definition of discrimination. 544 U.S. at 178. As discussed by the Fourth Circuit in *Wilcox v. Lyons*, 970 F.3d 452 (4th Cir. 2020), the assumption that an interpretation of Title IX can automatically be applied to the Fourteenth Amendment fails to acknowledge the United States Supreme Court's recognition of the distinctions between Title IX and the Fourteenth Amendment. "Title IX's protections are narrower in some respects and broader in others." *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 256 (2009).

Expanding the Fourteenth Amendment to cover a separate retaliation claim could only be justified by an analysis of the Amendment itself, which Harris has never attempted to do. The Fourteenth Amendment forbids the denial of "the equal protection of the laws." An equal protection claim is therefore necessarily comparative, requiring evidence that the plaintiff was treated differently from similarly situated individuals either because of their membership in some protected class or, under a class-of-one theory, for no reason at all, i.e., arbitrarily and capriciously. *See Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 602 (2008); *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285 (11th Cir. 2021).

In light of the Commission's lack of connection to the case, and the paucity of arguments made by Harris, this Brief does not purport to conduct the thorough

analysis that would be necessary to justify overturning this Court's settled precedent. But it is not difficult to see that many Equal Protection retaliation claims would effectively turn into a class-of-one claims, which the United States Supreme Court has held is inappropriate in the context of public employment. *Engquist*, 553 U.S. at 608-609. This is particularly true because, unlike race or gender, not all expressions of opposition to discrimination are necessarily protected. *Gogel v. Kia Motors Manufacturing of Georgia, Inc.*, 967 F.3d 1121, 1139 (11th Cir. 2020). As this Court discussed in *Gogel*, an employer can sometimes fire an employee for oppositional conduct "if the conduct so interferes with an employee's performance of her job duties that it renders her ineffective in the position in which she is employed." *Ibid.* This analysis is not necessarily comparative in nature, but requires an analysis of the employee's position, the employer's business interests, the nature of the action, its effects, etc. – in short, of all the factors that the *Engquist* Court held were beyond the purview of the 14th Amendment.

The differences between the various statutes and Constitutional provisions that may protect public employees is a feature, not a flaw, of our system of laws. Harris's request that this Court adopt the minority view and allow her to proceed with a retaliation claim is due to be denied, and the district court's grant of summary judgment is due to be affirmed.

13

## II.    PLAINTIFF-APPELLANT MARY HARRIS DID NOT PLAUSIBLY ALLEGE ANY CLAIM AGAINST THE MONROE COUNTY COMMISSION.

Plaintiff-Appellant Mary Harris did not make any allegations connecting the Monroe County Commission to the Monroe County Library and Library Board whatsoever in her Complaint.  She certainly did not allege that the Monroe County Commission ever crossed the boundaries laid out by Alabama law at any time during her employment with the Library, much less during her termination.  Nevertheless, she argues that the Commission's limited connection with the Library is enough to hold it liable – or at least to allow her to proceed with discovery against the Commission.  The overarching problem with her case is that her arguments are unmoored from her Complaint. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is limited to the four corners of the complaint." (internal quotation omitted)).  But even if Harris were given some leeway to go beyond her allegations, the district court's dismissal of her claims against the Commission with prejudice would still be due to be affirmed.

Harris has attempted to allege various claims against the Monroe County Commission pursuant to both the Fourteenth Amendment, as applied by 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964.  Although the causes of action for discrimination available under these provisions are substantively similar, there

14

are significant differences in who may be held liable for such claims under § 1983 and Title VII.[1]  Section 1983 provides for liability against "[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…"  *Respondeat superior* liability is not available in a § 1983 action.  *See, e.g.*, *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  In contrast, Title VII allows suits by an employee only against their employer.  42 U.S.C. § 2000e-2; *see also Busby v. City of Orlando*, 931 F.2d 764, 772 (11ᵗʰ Cir. 1991).  An entity may be held vicariously liable under Title VII for its agents' acts in certain cases where liability would not be available under § 1983.  *See, e.g., Burlington Industries v. Ellerth*, 524 U.S. 742, 765 (1998) (discussing availability of vicarious liability in Title VII harassment claims).

Thus, although Harris has lumped together both analyses, whether Harris has stated a claim against the Monroe County Commission pursuant to 42 U.S.C. § 1983 and  Title VII are in fact two separate questions.  First, did Harris adequately allege that the Monroe County Commission subjected her, or cause her to be subjected, to

---

[1] Of course, Harris's due process claims are completely independent of Title VII.

15

unlawful discrimination and/or retaliation or to the violation of her procedural due process rights, as required to state a claim under § 1983?   Second, did Harris adequately allege that the Monroe County Commission was her "employer" within the meaning of Title VII?

The answer to both questions requires the application of State law. Governmental authority in Alabama is divided amongst its various officials, bodies, boards, etc. in very specific ways.  *See, e.g., Gaines v. Smith,* __So.3d__, No. 1210304, 2022 WL 17073033 at *4 (Ala. Nov. 18, 2022) (discussing importance of doctrine of separation of power in Alabama).  Alabama's counties are creatures of statute and can only exercise the authority given to them by the Legislature, as well as those powers that arise by necessary implication or are indispensable for their purpose.  *Dillard v. Baldwin County Com'n*, 833 So.2d 11, 16 (2002).  "Moreover, enactments conferring power upon county governing boards will be strictly and narrowly construed.  In case of reasonable doubt as to the existence of board power, courts will customarily resolve the doubt against the county board."  *Id.* (quotations and citations omitted) (emphasis in *Dillard*).  Acts done beyond a county commission's power are void.  *Id.*

The Commission's authority vis-à-vis a public library is limited to establishing and maintaining, or assisting in establishing and maintaining, a library;

16

accepting gifts, donations, bequests, etc., for the library; and appropriating money to the library.  Ala. Code § 11-90-1 (1975).  "The government and supervision of such libraries ***shall*** be vested in a library board consisting of five members…"  Ala. Code § 11-90-2 (1975) (emphasis added).  The Board "shall have full power and authority to…[e]lect a librarian and other employees; and [m]anage and control the said library in order to carry out the full intent and purpose of this chapter."  Ala. Code § 11-90-3 (1975).

In light of this law, the simplest explanation for Harris's failure to allege that the Monroe County Commission played any role in her employment or termination is that they were not actually involved because they could not be involved.  Harris is due to be held to the allegations, or lack thereof, in her Complaint.  The district court's conclusion that she failed to state a claim against the Monroe County Commission is due to be affirmed.

A.    **Plaintiff failed to state a claim under 42 U.S.C. § 1983 against the Monroe County Commission.**

It is well-established that a governmental entity sued pursuant to 42 U.S.C. § 1983 for some violation of federal law can be held liable only for its own wrongful acts; *respondeat superior* liability is insufficient to state a § 1983 claim.  *See, e.g.*, *Monell*, *supra*.  The Monroe County Commission can only be held liable for Harris's termination if it either directly participated in the termination or there is a causal

17

connection between the termination and some action, decision, policy, etc. by the Commission. *See, e.g.*, *Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 819-20 (11th Cir. 2017). There is no allegation that the Monroe County Commission directly took any action regarding Harris or her employment, or that the termination was done pursuant to its policies or customs. Nevertheless, Harris is attempting to hold the Commission liable for the Library Board's decision solely because it appoints the members of the Board, even though it has no authority whatsoever over the Board after the appointments are made. As stated by the district court, this theory "is the epitome of *respondeat superior* liability." (Doc. 45, pg. 14, n. 5.)

Harris's reliance on *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), continues to be seriously misplaced. The issue in *Pembaur* was how to determine when an individual official's action can be properly regarded as the action of the entity itself, so as to cross the line between derivative and direct liability. The *Pembaur* Court held that such liability could attach "only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." 475 U.S. at 481. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and, or course, whether an official had final policymaking authority is a question of state law." *Ibid.*

18

In order to hold the Commission liable for the Board's actions under the policymaker liability theory of *Pembaur*, Harris would have had to have plausibly alleged that the Library Board was exercising some power belonging to the Monroe County Commission. She made no such allegations in her Complaint. And even if she had attempted to include a conclusory allegation of this nature, it would still fail as a matter of law because, as discussed *supra*, the Monroe County Commission does not have any authority over the Library employees. County commissions' authority vis-à-vis public libraries is extremely limited. Ala. Code § 11-90-1. After the Board is appointed, it exercises its own authority, in its own name. Ala. Code §§ 11-90-2, 11-90-3. It does not act for the Monroe County Commission in any capacity at that point.

*Cobb v. Montgomery Library Bd.*, 207 F.Supp. 880 (M.D. Ala. 1962), also does not support Harris's attempt to hold the Commission responsible for the Library Board's acts merely because of the power of appointment. In *Cobb*, it was undisputed that the city council exercised authority over both the library board and a museum not only through the appointment of its members, but also by its exercise of "the general supervisory and police power exercised by the municipal governing authority in the State of Alabama." 207 F.Supp. at 882. Thus, the court concluded that "the defendants, **and each of them**, have in the past and are at the present time

pursuing a policy, custom, or usage" of unlawful segregation. *Id.* at 884 (emphasis added). The city council was thus not held liable for the acts of the library and museum boards, but rather for its own acts.[2]

In contrast, there has never been any allegation whatsoever in this case that the Monroe County Commission played any role in Harris's employment or the termination process, or that either her termination itself or the procedures used to terminate her was caused by any of its policies or customs. Nor was the Library Board acting as a policymaker for the Commission when it terminated Harris. The district court's dismissal of the § 1983 claims is accordingly due to be affirmed.

### B. The Monroe County Commission cannot be held liable to plaintiff under Title VII of the Civil Rights Act of 1965.

Title VII allows suits by an employee against their employer. 42 U.S.C. § 2000e-2; *see also Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). Harris did not allege that she was employed by the Monroe County Commission *per se*. Rather, her claims against the Commission appear to be based on the assumption that the Commission and the Library may be aggregated and treated as a single employer for the purposes of Title VII.

---

[2]The scope of authority granted to municipalities and counties by the Legislature has long been different, with municipalities enjoying broader general police powers. *Compare* Ala. Code. § 11-45-1 (1975) with Ala. Code § 11-3A-2 (1975).

The seminal case in this Circuit on aggregation of nominally separate public entities is *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332 (11th Cir. 1999) (*en banc*).  The *Lyes* Court recognized that "federalism and comity concerns…should play a significant role in determining whether to treat as one body two governmental entities that are separate and distinct under state law."  166 F.3d at 1343.  These concerns "require that we accord substantial deference to a state lawmaking body's determination of whether two or more governmental entities are separate and distinct."  *Id.* at 1344.  Accordingly, there is a presumption that separate governmental entities are indeed separate, and should not be aggregated for the purposes of Title VII liability.  *Id.*

This presumption can be rebutted if it is established that the "purpose in creating or maintaining nominally separate entities was to evade the reach of the federal employment discrimination laws" or "where other factors so plainly indicate integration that they clearly outweigh the presumption that the entities are distinct."  *Id.*  This analysis requires consideration of the totality of the employment relationship, looking at factors like the amount of control that one entity exerted on the employee, and whether the entity had the power to hire, fire, or modify the terms and conditions of the employee's employment.  *Id.*; *see also Oaks v. City of Fairhope, Alabama*, 515 F.Supp. 1004, 1035 (S.D. Ala. 1981) (cited in *Lyes*)

21

(holding that city did not employ library board's employees for purposes of Title VII). This Court has recognized that financial or budgetary control is not a particularly useful factor in the public employment context. *Lyes* at 1343; *see also Peppers v. Cobb County, Georgia*, 835 F.3d 1289, 1297 (11th Cir. 2016) (holding that county and district attorney's office could not be considered as a single employer when county's only power over the district attorney's employees was to approve the manner and amount of compensation for employees set by the D.A).[3] The plaintiff has the burden of proving that the presumption has been "clearly outweighed." *Lyes*, 166 F.3d at 1345.

The viability of Harris's claims must be judged by the allegations in the Complaint itself. *See Wilchombe*, 555 F.3d at 959-60. And Harris's Complaint contains absolutely no allegations whatsoever regarding the relationship between the Library Board and the Commission, or any suggestion that the Commission was involved with her employment or the termination thereof. Harris therefore did not make out a plausible Title VII claim against the Commission.

---

[3] The *Peppers* plaintiff also made an alternative argument that the county and district attorney acted as joint employers with regards to him, which Harris has not done. 825 F.3d at 1299.

22

Even if Harris could supplement and amend the allegations in her Complaint through briefing, the additional arguments would not help her. Obviously, the Alabama law that provides for a separate library board could not have been enacted with an evasive purpose, as the last amendments to it were made in 1939. Ala. Code § 11-90-1. Nevertheless, at one point, she had suggested that perhaps the Monroe County Public Library was separately incorporated back in 1981 with an evasive purpose in order to prevent aggregation of County and Library employees. (Doc. 39, PageID.222.) This suggestion appeared to be based on an assumption that the Library had previously operated directly under the Commission – except that Harris has never been able to point to a provision in Alabama law that would have allowed a county to operate a library outside of the long-standing statutory scheme now codified at Ala. Code §§ 11-90-1 *et seq. See* Ala. Op. Atty.Gen. No. 94-00178, 1994 WL 16969221 (Ala. A.G. 1994) (stating that a city does not have the authority to dissolve its library board and directly operate a public library). More specifically in this case, this assumption completely ignores the fact that the records in this case establish that the Library was a private entity in 1981, and that it was incorporated such under the non-profit provisions of Title 10 of the Alabama Code (which was subsequently reorganized into Title 10A).

23

Harris has not made this argument in her principal brief on appeal, instead arguing that she should have had the opportunity to "develop evidence…in accordance with the factors used with respect to private employers," pointing out that *Lyes* was determined at summary judgment. (Harris Br., pg. 27.)  To the extent that Harris may be attempting to imply that dismissal is somehow generally inappropriate on such issues, she is incorrect.  *See, e.g., Chames v. Calhoun County Commission*, No. 21-11651, 2022 WL 1217652 at *3 (11th Cir. April 26, 2022) ("Plaintiff has alleged no facts from which we can infer reasonably that Plaintiff can overcome the presumption that the Sheriff's Office and the County are separate and distinct entities.")  Further, she still has not identified any factor(s) concerning the relationship between the Monroe County Public Library Board and the Monroe County Commission that would help her carry her burden of overcoming the presumption against aggregation.

The only hint of any operational connection between the Commission and the Board is purely financial in nature, based on the fact that the Probate Judge and one Commissioner had asked Steve Stacey to help audit the Board's expenses, which identified over $30,000.00 in Library checks for which no supporting receipts or invoices could be identified, after which the *Board* then retained an accounting firm to do an independent audit.  (Doc. 94-3, pg. 13.)  Even assuming, *arguendo*, that the

24

Complaint had contained allegations that the Commission provided some financial support to the Library Board and sought reasonable assurances from time to time that the public money it appropriated to the Board was being handled correctly, these kinds of fiscal ties amongst public entities are almost irrelevant to the aggregation analysis. *See Lyes* and *Peppers*, *supra*. What matters is whether one entity exercises any control over the employment relationship. As discussed *supra*, Alabama law is clear that the Library Board exercises full and complete control over its employees.

Harris failed to allege any facts from which it could reasonably be inferred that the Monroe County Commission and the Monroe County Library Board should be aggregated for the purposes of Title VII liability. The district court's dismissal of the Title VII claims against the Monroe County Commission with prejudice is accordingly due to be affirmed.

## CONCLUSION

Plaintiff-Appellant Mary Ann Harris failed to present substantial evidence that her rights were violated. Regardless of the merits of her substantive claims, Harris did not plausibly allege any reason that the Monroe County Commission could be held liable to her under either 42 U.S.C. § 1983 or Title VII. The district court's dismissal of all claims against the Commission with prejudice and the grant of summary judgment are accordingly due to be affirmed.

25

26

Respectfully submitted this the 30th day of December 2022.

**/s/Jamie Helen Kidd Frawley**

JAMIE H. KIDD FRAWLEY (ASB-7661-M76H)

Attorneys for Appellee Monroe County Commission

WEBB MCNEILL WALKER PC

One Commerce Street, Ste. 700

Montgomery, AL 36104

(334) 262-1850 – T

(334) 262-1889 – F

jfrawley@wmwfirm.com

## CERTIFICATE OF COMPLIANCE WITH TYPE – VOLUME LIMITATION

The undersigned attorney certifies that this corrected principal brief, filed on behalf of Appellee/Defendant the Monroe County Commission complies with Rule 32(a)(7)(b) in that it contains no more than 13,000 words. The entire brief, beginning with the page entitled "Statement of the Issues" through the Conclusion, contains 5,463 words.

Respectfully submitted this 30th day of December 2022.

**/s/Jamie Helen Kidd Frawley**
OF COUNSEL

## CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of December, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send to all counsel of record.

**/s/Jamie Helen Kidd Frawley**
OF COUNSEL