**DOCKET NO:**
**22-11236**


**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**Mary Harris**

      **Appellant,**

**v.**

**Monroe County Library Board of Trustees, et al.**
      **Appellees.**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**

**SOUTHERN DIVISION**

**CASE NO.:1:19-cv-00265 CG-N**

**REPLY BRIEF OF MARY HARRIS**

---

Lee Winston
**WINSTON COOKS, LLC**
**420 20th Street, Suite 2200**
**Birmingham, Al 35203**
**(205) 482-3551**
**Attorney for Mary Harris**
**February 21, 2023**

<u>**MARY HARRIS  v. MONROE COUNTY LIBRARY BOARD OF TRUSTEES**</u>

<u>**22-11236**</u>
**CERTIFICATE OF INTERESTED PERSONS**

Counsel hereby certifies that the following persons have an interest

in the outcome of this case:

1    The Honorable Callie V. S. Granade- United States District Court
     Judge

2    Monroe County Library Board of Trustees

3    Shannon Powell, Library Board Member

4    Ann Pridgen, Library Board Member

5    Jerome Sanders, Library Board Member

6    Steve Stacey, Library Board Member

7    Mary Harris, former Librarian and Plaintiff

8    Lee David Winston, counsel for plaintiff

9    Peter S. Mackey, Counsel for Library Board

10   Thomas Hart Benton, III  , Counsel for Steve Stacey

11   Jamie Helen Kidd Frawley, Counsel for Monroe County Commission

2

12      Monroe County Commission

Respectfully submitted,

*/s/Lee Winston*
Lee Winston

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ....................................................... 2

TABLE OF CONTENTS ..................................................................................... 2

TABLE OF AUTHORITIES  .............................................................................. 3

THE ARGUMENT  ............................................................................................ 4

CONCLUSION .................................................................................................. 12

CERTIFICATE OF COMPLIANCE .................................................................... 14

CERTIFICATE OF SERVICE  ……………………………………………………..15

## TABLE OF AUTHORITIES

### Cases

*Dejarnett v. Willis*, 976 F.Supp.2d 1271, 1295 (M.D.Ala., 2013)………………..11

*Killian v. U.S*., 82 S.Ct. 302, 315, 368 U.S. 231, 255 (U.S.Ill. 1961)…………….8

*Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1344–45 (11th Cir.), *judgment entered*, 169 F.3d 1322…………………………………………………………12

*Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (C.A.7 (Ill.), 2016)………6,7

### Other Authorities

Stout, James Who are the Sons of the Confederate Veterans,
https://www.thenation.com/article/society/sons-confederate-veterans-.email-list/ .8

**ARGUMENT**

**<u>Evidence is Evidence</u>**

Mr. Stacey and the Monroe County Library Board posit that Harris waived summary judgment arguments by characterizing the EEOC evidence, (i.e. the Board received the EEOC charge and fired Harris for the contents) as part of a convincing mosaic of discrimination, rather than labeling termination as stemming from direct evidence.

Sifting of evidence into different buckets and claiming waiver misses the real question. Did Harris consistent with Federal Rule of Civil Procedure 56 demonstrate disputed issues of material fact and law for trial?

As to the contents of the charge , the Board minutes reflect that Harris was terminated for claiming that the persons who attended the meeting were "KKK members" whereas the charge uses the phrase "known affiliates of the KKK".

In the Southern District of Alabama Court, Harris argued that she was fired for her EEOC charge contents-as the termination letter states. The Board Minutes reflects that she was fired for specifically stating that the charge alleged that confederacy celebration was attended by KKK members.

5

"Ann Pridgen made the recommendation to relieve Ms. Harris from her job as interim librarian due to defamation of character allegations that 70 citizens that attended a library program were members of kkk."[1]  The program at the library was held to Celebrate Confederate Memorial Day with Sons of Confederate Veterans, Camp 1610 of Monroe County.   Stacey testified that "almost all of those in attendance are descended from a confederate veteran"[2] The termination letter points that the Board was shocked as women cannot be members of the KKK.[3]

Harris's EEOC charge stated that attendees were "known affiliates" rather than KKK members.  Harris perceptions were based on seeing the confederate flag on bandanas and upon the use of a racial slur.[4]  Harris received complaints from the public that the program was intertwined with slavery.[5] In the 30 plus years that Harris was employed at the public library this was the first time the direct descendants of the Confederate States Army put on program to celebrate Confederate Memorial day, an Alabama state holiday.

Regardless of the characterization of the termination letter, it is clear that the Board believed Harris's EEOC charge allegations warranted termination. Faulting

_____

[1] Doc. 101-5, PageID#738.
[2] Doc. 101-2, PageID#724, Doc. 101-1, pg. 10 PageID#719, lines 14-19.
[3] Doc. 43, pg. 19 Termination Letter.
[4] Doc 37, pg. 121 lines 17-23.
[5] Stacey Supplemental appendix Harris Deposition Doc. 37, pg. 102, lines 1-14.

Harris and arguing waiver the Board contends cannot argue the termination letter was direct evidence.  Below Harris argued the letter was part of convincing mosaic of discrimination including the Board's employing her to be interim director for years but refusing to give her the job in a permanent capacity.  There had never been an African American librarian in charge of the Monroe County Library.

In condemning the labeling of evidence as direct or indirect Judge Easterbrook explains,

> Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the "direct" evidence does so, or the "indirect" evidence. **Evidence is evidence**. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect." (Emphasis added). *Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (C.A.7 (Ill.), 2016)

With respect to district courts within the 7th Circuit further held:

> That legal standard, to repeat what we wrote in *Achor* and many later cases,  is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect."

Some opinions have observed that the methods largely rely on the same pieces of evidence. See *Harper*, 687 F.3d at 314 ("[T]he line between circumstantial evidence under the direct method and indirect evidence of discrimination or retaliation under the burden-shifting approach has been blurred by the gradual integration of these methodologies."); *Hutt*, 757 F.3d at 691. Why have two tests if they consider the same information and answer the same question?

True, some cases permit easy inferences, such as the fabled employer who admits to firing an employee because of race. But even then factfinders must ask themselves what the admission means. Few discrimination cases are so straightforward—indeed they are often factually complex and require sifting through ambiguous pieces of evidence. And the direct-and-indirect framework does nothing to simplify the analysis. Instead it complicates matters by forcing parties to consider the same evidence in multiple ways (and sometimes to disregard evidence that does not seem to fit one method rather than the other).

Accordingly, we hold that district courts must stop separating "direct" from "indirect" evidence and proceeding as if they were subject to different legal standards. Once again, this court must accept its share of the responsibility—because even as some panels were disparaging the "direct" and "indirect" approaches, other panels were articulating them as governing legal standards.

*Id.* at 765 (cleaned up)

In the Southern District of Alabama, Harris argued that she was fired for her EEOC charge and contents-as the termination letter states. The Board Minutes reflects that Harris was fired for specifically stating that confederacy celebration was attended by "KKK members".[6] The charge used the phrase "known affiliates" of the KKK.

---

[6] Board Minutes Doc. 101-5, Page ID# 738.

There is a difference between membership and affiliation. "That instruction merely quoted dictionary definitions and then stated that '(a)ffiliation * * * means something less than membership but more than sympathy." *Killian v. U.S*., 82 S.Ct. 302, 315, 368 U.S. 231, 255 (U.S.Ill. 1961)(Jury instructions were proper on membership v. affiliation in relation to criminal case where the defendant was alleged to be a communist party member).

Here, Harris took the celebration of confederate memorial day by the Sons of the Confederate of Veterans to be affiliated with the KKK. She is not alone in drawing a connection between the Sons of the Confederate veterans and the KKK.[7]

**Harris Held A Property Interest in Employment**

The appellees dispute that despite working 30 plus years in the Monroe County Library starting as the Children's Librarian and ultimately serving as the acting director (when the new board refused to appoint her despite her qualifications as permanent director) that Harris could be considered a tenured government employee and entitled to a pretermination hearing. Former Board Member Milton Coxwell, Jr. acknowledged that, "…Ms. Harris has been a good and faithful employee and would render capable and dedicated service a Library Director."[8]

---

[7] Stout, James Who are the Sons of the Confederate Veterans,
https://www.thenation.com/article/society/sons-confederate-veterans-email-list/
[8] Doc. 42, Harris Supplemental Appendix pg. 3.

The Amendments to the Articles of Incorporation of the Monroe County Library Board as to employees provided, "The Corporation shall have to power to engage and compensate employees for the day today operation of the Corporation's facilities and programs and any such operation shall be deemed public employees and entitled to all benefits and privileges generally afford public employees in the State of Alabama."[9]

The appellees interpret that statement as employees are not entitled to any rights but those of an at will employees and credited Ms. Harris's testimony, a non-lawyer and plaintiff to set the terms of her employment when she testified that she was an at will employee. Harris did testify that she believed that had to be "….cause before anybody fired you."[10] Under the Board and Stacey interpretation, the library employees have no rights beyond being an at will employee.

Of course, at summary judgment, the evidence should not be weighed in the defendant's favor. "Rule 56, but it is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

---

[9] Doc. 37 Stacey Supplemental Appendix, pg. 10.
[10] Stacey Supplemental Appendix Doc. 37, pg. 69, Harris Dep. pg. 67 lines 1-6.

The Board and Mr. Stacey further argue that if Harris was entitled to a pre-termination hearing, she received it.  This is despite Board Chairman Pridgen's testimony that she had no idea that the purpose of the meeting was discuss Harris's termination rather than the allegations of her EEOC charge.  In deposition and affidavit, Pridgen acknowledged that the meeting was to discuss Harris's EEOC allegations that the Sons of Confederate program celebrating confederacy was attended by known affiliates of the KKK, not Harris's proposed termination.[11]

Compare the no advance notice of termination for Harris with another Court in Alabama found to constitute satisfactory notice.

This letter further explained Dejarnett's pre-termination hearing rights, including the date, time, and location of the hearing, and the fact that she would be given a full and complete opportunity to respond to the charges against her. While Dejarnett requested, but was not given, her personnel file prior to her termination hearing before Mayor Willis, there is no dispute that she was given a copy of at least three customer complaints against her prior to this hearing. She also attended her termination hearing before Mayor Willis, accompanied by counsel, and had every opportunity to respond to the charges made against her. Dejarnett and her attorney even submitted letters to Mayor Willis regarding her termination prior to her hearing with Mayor Willis, and the complaints made against her (which she and her counsel both had before the termination hearing) were discussed at length during the hearing with Mayor Willis. In sum, the Court concludes that Dejarnett was provided with a sufficient pretermination hearing, that she had ample opportunities to understand the charges against her, and that she had numerous opportunities to respond to those charges.

---

[11] Doc. 37, pg. 140,¶6 Pridgen Declaration; District Court Docket Doc. 101-3, pg. 45; Pridgen Dep. pg. 45-46.

*Dejarnett v. Willis*, 976 F.Supp.2d 1271, 1295 (M.D.Ala., 2013).

Here, with no notice of the termination, Harris had no meaningful opportunity to respond.

**Monroe County Commission**

Harris worked for 30 plus years, the last two as the acting but not permanent director of the Monroe County Library. Harris considered herself a Monroe County employee as the County was responsible for paying at least some of the bills, the pay check and importantly appointed the Commissioners that ran the library.[12]

Monroe County contends that despite exclusively appointing all the trustees and instructing Board Member Stacey to investigate Harris to suggest that the Commission bears at least some responsibility for library operations is borderline frivolous and sanctionable. Monroe County Library Board Member Stacey offered a sworn statement that at the request of President of the Monroe County Commission and another Monroe County Commissioner requested Stacey investigated alleged financial improprieties.[13] Harris was financially investigated, referred to local district attorney office who found sloppy record keeping but not fraud or illegal activities.[14]

---

[12] Doc. 37 (Stacey Supplemental Appendix) pg. 64, lines 13-23, pg.65, lines 1-6.
[13] Doc. 37, pg 12, ¶5, Stacey Declaration.
[14] Doc. 37, pg. 29, News Release.

If the County Commission is directing investigations that at least raises questions of their control of library operations and Board independence. *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1344–45 (11th Cir.), *judgment entered*, 169 F.3d 1322 (11th Cir. 1999)(holding that government entities governmental can be consider as single employer).

The practical effect of the refusal to stand behind their appointments to remove the library employees from Title VII protection.

## <u>CONCLUSION</u>

Harris respectfully requests that summary judgment be reversed and the case remanded for trial.

Respectfully submitted,

<u>/s/Lee Winston</u>
Lee D. Winston

**<u>OF COUNSEL</u>**
WINSTON COOKS, LLC
420 20th Street North, Suite 2200
Birmingham, AL 35203
205.482.3551

## CERTIFICATE OF TYPE-VOLUME COMPLIANCE

Counsel hereby certifies that this brief complies with Fed.R. App. P. 32(g)(1), in that excluding footnotes (in 12-point font) it was prepared in Times New Roman, 14-pt. font using and the total word count, as determined by the word processing system used, is 2,269 words.

> */s/Lee Winston*
> Lee Winston
> Of Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February 2023 I filed a true and correct copy of the foregoing via the Court's Electronic Filing System which will notify the  counsel of record for Defendants:

*/s/ Lee D. Winston*
OF COUNSEL